## UNITED STATES *v.* CARR.

### APPEAL FROM THE COURT OF CLAIMS.

No. 411. Submitted December 3, 1889. — Decided January 6, 1890.

When a sum of money has been voluntarily paid by the United States to a mail contractor, by mistake of fact, or under circumstances to bring the payment within the provisions of Rev. Stat. § 4057, the amount may be applied by the government towards the payment of any balance that may be found due him, in the settlement of his accounts, for other services under his contract.

A contract to carry the mails from one station to another station, by way of two intervening specified stations, a stated number of miles and back, is not performed by carrying them over that route one way, returning from the terminal station to the place of beginning by a shorter route, avoiding the intermediate stations.

When a contractor for carrying the mails seeks to recover the full contract price, for a service which, as actually performed, was less than that contracted for, the burden of proof is on him to show knowledge or information by the Department of his conduct in the premises.

Knowledge by the Post-Office Department of the failure of a mail contractor to perform the full service required by his contract is not to be presumed from reports of the local postmaster to the Department that the service had been performed.

CARR filed his petition against the United States in the Court of Claims on the 17th of February, 1885, averring that the Postmaster General entered into a contract in writing with him in April, 1878, for carrying the mails of the United States from Salinas City, in the State of California, to Gabilan, in that State, and back from Gabilan to Salinas City for the annual sum of $796, a copy of which contract he attached to his petition; that at the time of the letting of the contract, and for upwards of four years prior thereto, the mails were carried upon the route aforesaid, outward from Salinas to Santa Rita,

a distance of three miles, and from Santa Rita to Natividad, a distance of four miles, and from the last-named place to Gabilan, a distance of eight miles, and on the return trip direct from Gabilan to Salinas, a distance of about ten miles, without passing through Natividad and Santa Rita; that he believed that the mode of transportation last aforesaid was established under the authority of the Postmaster General for said route, and proposed to carry the mails upon said route for the compensation aforesaid, upon the understanding that the mails were, during the term of the contract, intended by said proposal to be carried in the manner before stated; that he commenced service under the contract July 1, 1878, and for four years, including the 30th day of June, 1882, carried the mail six times a week from Salinas, by way of Santa Rita and Natividad, to Gabilan, and back direct from Gabilan to Salinas, by a direct line, not passing through Natividad and Santa Rita; that the compensation was paid up to January 1, 1882, but not from the first of January to the first of July, 1882; and that the Postmaster General had refused to pay petitioner the sum of $398, the amount of compensation due for the period last mentioned, upon the ground that petitioner had not performed his contract, inasmuch as he had not carried the mails from Gabilan to Salinas by way of Natividad and Santa Rita. Petitioner further alleged that at the letting he presented proposals to the Postmaster General for carrying the mails upon four other routes for the period of four years, namely, from July 1, 1878, to June 30, 1882, and obtained contracts therefor at certain compensation in the proposals named; that from the compensation due on the last-named contracts, $348.25 was withheld on account of the first-named contract, and there was also deducted from the four last contracts the sum of $35.92, for certain alleged delays in the transportation of the mail. Petitioner therefore prayed judgment for the sum of $782.17.

The findings of fact and conclusion of law are as follows:

" I.

" In April, 1878, the Postmaster General and the claimant entered into a contract to carry the mails on route No. 46,118,

in the State of California, from Salinas, by Santa Rita and
Natividad, to Gabilan and back, six times a week, for the
annual sum of $796. The material portions of said contract
are set forth in Finding V.

"II.

"The mails were carried on said route under said contract
for four years, commencing July 1, 1878, and ending June 30,
1882, as follows:

"The mails were carried by the claimant from Salinas, by
way of Santa Rita and Natividad, to Gabilan, and back to
Salinas by a direct route from Gabilan to Salinas. The dis-
tance from Salinas, by Santa Rita and Natividad, to Gabilan
is twelve miles; the distance from Gabilan to Salinas by a
direct route is ten miles.

"That the said route was operated by the claimant since the
year 1870, the mails being always carried in the same manner
in which the same were carried by the claimant, namely, from
Salinas, by way of Santa Rita and Natividad, to Gabilan, and
from Gabilan to Salinas direct, and until the date of the
certificate of inspection of the 12th of May, 1882, have always
been certified as duly carried and paid for accordingly by the
Post-Office Department. The provisions of the contract under
which said service was performed were in all respects similar
to the provisions of the contract sued on.

"III.

"For the failure of claimant to carry the mails via Santa
Rita and Natividad, as aforesaid, from July 1, 1878, to March
31, 1882, the Postmaster General, upon May.13, 1882, entered
a deduction from his compensation of $746.25, which deduc-
tion equals one-quarter of the total compensation fixed by the
contract for whole service under it during the period covered
by the alleged delinquency.

"There is no proof that any subsequent failure to said date
of the claimant to carry the United States mail via Santa Rita
and Natividad has ever come to the notice of the Postmaster
General or the Post-Office Department.

## "IV

"In the advertisement of November 1, 1877, inviting proposals for carrying the mails of the United States in certain States and Territories, the Postmaster General invited bids for carrying said mails on the following route in California, to wit:

"'46,118. From Salinas, by Santa Rita and Natividad, to Gabilan, 15 miles and back, six times a week.

"'Leave Salinas daily, except Sunday, at 1 P.M.;

"'Arrive at Gabilan by 7 P.M.;

"'Leave Gabilan daily, except Sunday, at 6 A.M.;

"'Arrive at Salinas by 12 M.

"'Bond required with bid, $1800.'

## "V

### "'No. 46,118. $796.

"'This article of contract, made on the 15th of March, 1878, between the United States of America (acting in this behalf by the Postmaster General) and J. D. Carr, contractor, and A. B. Jackson, of Salinas, Monterey County, California, and George Pomeroy, of Salinas, Monterey County, California, as his sureties, witnesseth: That whereas J. D. Carr has been accepted, according to law, as contractor for transporting the mail on route No. 46,118, from Salinas, Cal., by Santa Rita and Natividad, to Gabilan and back, six times a week, at $796 per year, for and during the term beginning July 1, 1878, and ending June 30, 1882.

\*　　　　\*　　　　\*　　　　\*　　　　\*

"'For which services, when performed, the said J. D. Carr, contractor, is to be paid by the United States the sum of $796 a year, to wit: Quarterly, in the months of November, February, May and August, through the postmasters on the route, or otherwise, at the option of the Postmaster General; said pay to be subject, however, to be reduced or discontinued by the Postmaster General, as hereinafter stipulated, or to be suspended in case of delinquency.

"'It is hereby stipulated and agreed by the said contractor

and his sureties that the Postmaster General may discontinue or extend this contract, change the schedule and termini of the route, and alter, increase, decrease, or extend the service, in accordance with law, he allowing a *pro rata* increase of compensation for any additional service thereby required, or for increased speed, if the employment of additional stock or carriers is rendered necessary; and in case of decrease, curtailment, or discontinuance of service, as a full indemnity to said contractor, one month's extra pay on the amount of service dispensed with, and a *pro rata* compensation for the service retained: *Provided, however*, That in case of increased expedition, the contractor may, upon timely notice, relinquish the contract.

" 'It is hereby also stipulated and agreed by the said contractor and his sureties as aforesaid that they shall forfeit —

" '1. The pay of a trip when it is not run, and, in addition, if no sufficient excuse for the failure is furnished, an amount not more than three times the pay of the trip.

" '2. At least one-fourth of the pay of the trip when the running is so far behind time as to fail to make connection with a depending mail.

" '3. For violating any of the foregoing provisions touching the transmission of commercial intelligence more rapidly than by mail; or giving preference to passengers or freight over the mail or any portion thereof, or for leaving the same for their accommodation; or carrying, otherwise than in the mail, matter which should go by mail; or transporting persons engaged in so doing, with knowledge thereof, a penalty equal to a quarter's pay.

" '4. For violating any other provision of this contract touching the carriage of the mails, or the time and manner thereof, without a satisfactory explanation of the delinquency, in due time, to the Postmaster General, a penalty in his discretion. That these forfeitures may be increased into penalties of a higher amount, in the discretion of the Postmaster General, according to the nature or frequency of the failure and the importance of the mail: *Provided*, That except as herein

otherwise specified, and except as provided by law, no penalty shall exceed three times the pay of a trip in each case.'

\*      \*      \*      \*      \*

[Duly signed, sealed and delivered.]

## " VI.

" ' CERTIFICATE OF INSPECTION.

" ' POST-OFFICE DEPARTMENT.

" ' OFFICE OF THE SECOND ASSISTANT POSTMASTER GENERAL.

" ' DIVISION OF INSPECTION,

" ' *Washington, D. C., October* 23, 1878.

" ' SIR: I hereby certify that the mails have been carried by contractors in accordance with provisions of contract, or orders, on routes stated herein by number in the State of California, without any failures or delinquencies, so far as shown by returns received, for the quarter ended September 30, 1878.

\*      \*      " ' 46,118      \*      \*

" ' J. L. FRENCH,

" ' *Acting Second Assistant Postmaster General.*

" ' To the AUDITOR OF THE TREASURY

FOR THE POST-OFFICE DEPARTMENT.'

" On March 22, 1882, Second Assistant Postmaster General addressed a letter to the postmaster at Natividad and received information from him on April 6, 1882, that the mail was not carried from Gabilan by way of Natividad and Santa Rita, and that such had been the practice since the present contractor had the contract. The postmaster at Santa Rita certified to the Postmaster General that such had been the practice since he became postmaster. The date of the letters as to the continuance of the mode of carrying the mails was May 1, 1882.

## " CONCLUSION OF LAW.

" Upon the foregoing facts the court determines, as a conclusion of law, that the claimant is entitled to recover the sum of $746.25."

Judgment was thereupon rendered in favor of the petitioner

for $746.25, from which the defendant appealed to this court. The opinion of the Court of Claims will be found in 22 C. Cl. 152.

*Mr. Attorney General* and *Mr. Heber J. May* for appellants.

*Mr. A. J. Willard* and *Mr. Samuel M. Lake* for appellee.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The amount sued for was $782.17, of which the sum of $35.92, the aggregate of some small deductions upon other contracts, was disallowed by the Court of Claims, and that result accepted by the claimant.

It appears from the third finding that the Postmaster General deducted from the claimant's compensation, under contract No. 46,118, $746.25, "which deduction equals one-quarter of the total compensation fixed by the contract for whole service under it during the period covered by the alleged delinquency;" being the three years and three-quarters from July 1, 1878, to March 31, 1882. It follows, then, that the contractor performed the service for the months of April, May and June, 1882, as required by the contract, as here-after considered. As to $398 of the $746.25, that sum was withheld from the compensation under the contract in question, the last two quarters not having been paid, but the balance of $348.25 was deducted from moneys coming to the petitioner on other contracts, and he contends that it should not have been so deducted, because that amount had been voluntarily paid by the United States, and, therefore, could not be recovered back. But if the contractor was not entitled to $746.25 of the compensation provided by this contract, and if payments were made thereon up to the last two quarters by mistake, for service that had not been performed, or under such circumstances as brought them within section 4057 of the Revised Statutes, then the payments could be recovered back, and their deduction in part from other money coming to

petitioner was proper in the settlement of the accounts between the parties.

Section 4057 is as follows:

" In all cases where money has been paid out of the funds of the Post-Office Department under the pretence that service has been performed therefor, when, in fact, such service has not been performed, or as additional allowance for increased service actually rendered, when the additional allowance exceeds the sum which, according to law, might rightfully have been allowed therefor, and in all other cases where money of the Department has been paid to any person in consequence of fraudulent representations, or by the mistake, collusion, or misconduct of any officer or other employé in the postal service, the Postmaster General shall cause suit to be brought to recover such wrong or fraudulent payment or excess, with interest thereon."

This section was applied in *United States* v. *Barlow, ante,* 271, 281, and Mr. Justice Field, in delivering the opinion, quotes with approval the language of Baron Parke in *Kelly* v. *Solari,* 9 M. & W. 54, 58, that "where money is paid to another under the influence of a mistake, that is, upon the supposition that a specific fact is true, which would entitle the other to the money, but which fact is untrue, and the money would not have been paid if it had been known to the payer that the fact was untrue, an action will lie to recover it back, and it is against conscience to retain it;" and adds: "Reasons for the application of the rule are much more potent in the case of the contracts of the government than of contracts of individuals; for the government must necessarily rely upon the acts of agents, whose ignorance, carelessness or unfaithfulness would otherwise often bind it, to the serious injury of its operations." Nothing more need be said on this point, and this brings us to the real question in the case.

Claimant contracted to carry the mails "from Salinas, by Santa Rita and Natividad, to Gabilan, 15 miles and back." The time to be taken on the trip was specified at six hours each way. There is no ambiguity in this contract, from which a doubt could arise as to whether the return route was to be

identical with the outward route. Where places are designated as on the line of a mail route from one point to another and back, no reason is perceived for their omission on the return. There may be instances where retracing the road is not deemed important, or is impracticable in view of particular exigencies; but if so, the difference in route would be specified. And where the transportation is for a given number of miles and back, this does not mean the number named one way and an indefinite and less number the other.

The contractor was clearly required to return to Salinas from Gabilan by the same way he went to Gabilan from Salinas.

The Court of Claims did not take any other view of the language of the contract, but determined the case to the contrary, upon the ground that the contract had been otherwise "construed by the claimant, and the responsible power of the defendants, and that construction became and was the contract at the time the services were performed covered by the period of deductions." This conclusion is reached as to the Post-Office Department upon the reasoning that as "it was the duty of the postmasters connected with the mail route at the termini to report to the department the manner in which the service was performed, and the presumption is, that they performed their duty and that the department was advised, not only during the time of the performance of the contract in controversy but the antecedent contracts, covering the same service embraced in contract No. 46,118;" and as the evidence was, "that on October 23, 1878, the Acting Second Assistant Postmaster General certified to the Auditor of the Treasury for the Post-Office Department that for the quarter ending September 30, 1878, there had been no failure or delinquency in the execution of the contract upon the part of the contractor;" and as "it is safe to assume that for all preceding payments the same certificate was made, based upon reports furnished by the postmasters connected with route No. 46,118;" the acts of "the responsible officers of the department being in possession of the same information and knowledge" as the postmasters, "commit the defendant to the construction of the agreement as placed upon it by the parties who performed

the labor of its execution, and who were cognizant of the mode in which it was performed."

The Department did not direct or affirmatively permit the contractor to pursue the course he did, and if he could recover in whole or in part, upon the ground of an acquiescence equivalent to assent in a certain mode of dealing with the subject matter of the contract, the burden was on him to show knowledge or information by the Department of his conduct in the premises. No evidence to establish such knowledge or information having been adduced, the case was made to rest upon the presumption that the postmasters at the termini, where the schedules of the time of the arrival and departure of the mails were kept and registers thereof made and returned, were acquainted with the terms of the contract and claimant's non-compliance therewith, and this being presumed, upon the further presumption that they must have reported the failure in performance to the Department.

In *United States* v. *Ross*, 92 U. S. 281, 284, Mr. Justice Strong, speaking for the court, says:

" The presumption that public officers have done their duty, like the presumption of innocence, is undoubtedly a legal presumption; but it does not supply proof of a substantive fact. Best, in his Treatise on Evid. sect. 300, says: ' The true principle intended to be asserted by the rule seems to be, that there is a general disposition in courts of justice to uphold judicial and other acts rather than to render them inoperative; and with this view, where there is general evidence of acts having been legally and regularly done, to dispense with proof of circumstances, strictly speaking, essential to the validity of those acts, and by which they were probably accompanied in most instances, although in others the assumption may rest on grounds of public policy.' Nowhere is the presumption held to be a substitute for proof of an independent and material fact." ·

Section 3849 of the Revised Statutes provides that "every postmaster shall promptly report to the Postmaster General every delinquency, neglect, or malpractice of the contractors, their agents or carriers, which comes to his knowledge."

By none of the findings of fact is it shown that the delinquency in question ever came to the knowledge of the postmasters at the termini of this mail route. But under Finding VI it appears that "on March 22, 1882, Second Assistant Postmaster General addressed a letter to the postmaster at Natividad and received information from him on April 6, 1882, that the mail was not carried from Gabilan by way of Natividad and Santa Rita, and that such had been the practice since the present contractor had the contract. The postmaster at Santa Rita certified to the Postmaster General that such had been the practice since he became postmaster. The date of the letters as to the continuance of the mode of carrying the mails was May 1, 1882;" and from Finding III, that the Postmaster General instantly repudiated that manner of carrying the mails, and that they were not so carried for the remaining quarter under the contract.

Of course the postmasters at Santa Rita and Natividad knew that the mails did not come back through those places, but it does not follow that they were aware that the contractor was obliged so to carry them. Indeed, as they made no effort to have this state of things remedied, so far as appears, it is rather to be presumed that they were not aware that it was the result of the delinquency of the contractor.

The fact of knowledge on the part of the postmasters of the delinquency, from which the inference is drawn that they reported it, was a fact to be proven and not to be presumed. If they knew of the delinquency it was undoubtedly their duty to report it, but it is not to be assumed that they did report it, without some evidence of such knowledge; and upon this record the irresistible inference is that the delinquency, if reported, would not have been permitted to continue.

The certificate of the Second Assistant Postmaster General is dated October 23, 1878, and states that the mails had been carried "without any failures or delinquencies, so far as shown by returns received, for the quarter ended September 30, 1878." As the contract was a plain one, and was not performed according to its terms, we think this certificate indi-

cates clearly that the "returns received" did not show the non-performance. So far from strengthening the alleged presumption that the postmasters reported the facts as they existed, its effect is to the contrary. What they did report, in fact, is not shown; and, inasmuch as under Finding VI no other inference can be drawn than that the first information that the Postmaster General had that the mail was not carried from Gabilán by way of Natividad and Santa Rita, was April 6, 1882, we cannot accept the conclusion that the responsible officers of the Department were in possession of information and knowledge of the conduct of the contractor before that time, and acquiesced in the manner in which he carried the mails during the period in question, or during the preceding years, in respect to which it is found that he so operated the route under a similar contract.

We can find nothing in the findings to justify us in holding that the Department paid this claimant the full measure of his compensation prior to March 31, 1882, with knowledge of the manner in which he was performing the work, or that the Department ever put the interpretation upon the contract which is now contended for, or induced the contractor to enter into the contract by reason of any such interpretation on its part. The deduction of $746.25 was properly made, and the conclusion of law on the facts found was erroneous.

*The judgment is reversed and the cause remanded with directions to enter judgment for the United States.*