MISSOURI, K. & T. RY. CO. v. FOREMAN et al.

(Circuit Court of Appeals, Eighth Circuit. November 5, 1909.)

No. 2,904.

1. DEATH (§ 41*)—ACTION FOR WRONGFUL DEATH—PARTIES—ARKANSAS STATUTE.

Mansf. Dig. Ark. 1884, § 5226 (Ind. T. Ann. St. 1899, § 3431), in force in Indian Territory prior to its admission as a state, gives a right of action for wrongful death where there are no personal representations to the heirs at law of the deceased person, and provides that the amount recovered shall be for the exclusive benefit of the widow and next of kin, "and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action, the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person." *Held*, that while, under such statute, there can be no recovery unless pecuniary loss is shown to the widow or next of kin, where a person killed left as his only heirs at law under the statute his wife and mother, the mother was a necessary party plaintiff, even though she may not have individually sustained any pecuniary loss through his death.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 56–58; Dec. Dig. § 41.*]

2. MASTER AND SERVANT (§ 265*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—EVIDENCE OF NEGLIGENCE.

The fact of an accident in which a railroad employé is injured carries with it no presumption of negligence on the part of the company; but, in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

order to render it liable, some specific act of negligence must be affirmatively shown.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 881; Dec. Dig. § 265.*]

3. MASTER AND SERVANT (§ 278*)—MASTER'S LIABILITY FOR INJURY TO SERVANT —DEFECTIVE RAILROAD CARS.

A freight train on defendant's railroad broke in two by the pulling out of a drawhead of the car next the engine, which was stopped about ten feet from the car while the engineer, plaintiff's intestate, who was conductor, and a brakeman, were making a temporary attachment. While so at work, the engine moved back, and deceased was caught between it and the car and killed. Plaintiffs alleged two acts of negligence on the part of defendant: A defective air brake, which permitted the engine to move; and a leaky throttle. But it appeared that the engine moved upgrade, and it was not shown that the lever was so set that it would move backward if started by the steam. The fireman was on the engine. *Held*, that in the absence of some evidence to show what in fact caused the engine to move, and that it was due to some act of negligence on the part of defendant, it could not be held liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954-972; Dec. Dig. § 278.*]

In Error to the Circuit Court of the United States for the Eastern District of Oklahoma.

Action by Mary K. Foreman and Mary E. Foreman against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiffs, and defendant brings error. Reversed.

Clifford L. Jackson, for plaintiff in error.

D. H. Wilson and A. A. Osgood, for defendants in error.

Before VAN DEVANTER, Circuit Judge, and CARLAND and POLLOCK, District Judges.

POLLOCK, District Judge. This action was brought to recover damages for a death alleged to have occurred by reason of the negligent, wrongful acts of the railway company. The facts are:

Deceased was a freight conductor in the employ of defendant, engaged in running a freight train south on defendant's line of road from Parsons, Kan., to Muskogee, Okl. On the 5th day of August, 1903, when the train, composed of 12 to 15 ballast cars, had passed Russell Creek station, and when about seven telegraph poles north of milepost No. 419 on defendant's line of road, the drawhead in the car next to the engine pulled out. At this time the crew in charge of the train consisted of deceased, as conductor, Miller, as engineer, Searcy, fireman, Wyman, head, and Denham, rear brakemen. Passenger train No. 4 was about due at this place, as was a freight train against which this train had a time order, which facts rendered it necessary for the crew in charge of the train to act quickly and promptly in moving the train. When the drawhead pulled out, the engineer applied the brakes, stopped the engine, threw the reverse lever in the center of the quadrant as nearly as possible, got down from the engine, leaving it standing some eight or ten feet in front of the car from which the drawhead had been pulled out, and leaving the fireman in the cab on the engine. After ascertaining in what the trouble consisted, the engineer went back to

the engine, procured a chain with which to fasten the train to the engine in place of the broken drawhead. As deceased, engineer Miller, and front brakeman Wyman, were working between the rails chaining the car and engine together, the deceased being at the time on his knees assisting in passing the chain around the front axle of the car, from some cause the engine backed up, catching the deceased between the drawbar of the engine and the deadwood timbers of the car, from the effect of which his head was crushed, resulting in immediate death.

To recover damages for loss so sustained, this action was brought by the widow and next of kin, and the mother of deceased, jointly, against the railway company. The specific grounds of negligence charged in the petition are these:

"That the backing of said engine was the result of its being out of repair and in an unsafe and dangerous condition, in this, that the air brake and appliances controlling the same were out of order and leaky so that after being set the air brake would leak off and allow said engine to start and move; and in this, that the throttle of said engine was out of order and leaked steam to such an extent as to cause the engine to move after the steam valve had been closed so far as it could be closed in the condition it then was in, by reason whereof said engine No. 490 was, and for several days before that had been, unsafe and dangerous to use in and about the handling and operating of a train of cars—all to the knowledge of said defendant."

While many errors are assigned and discussed, in the view we have taken of the case, we deem it necessary to notice but two: (1) The action of the trial court in denying the request made by defendant for an instructed verdict in favor of defendant and against the mother, Mary E. Foreman; (2) the refusal of the trial court to direct the jury, on the entire case, to return a verdict in favor of the defendant. And of these in their order. Was the mother of deceased a proper or necessary party plaintiff to this action?

It being the insistence of plaintiff in error in this regard, as deceased was contributing nothing toward the support of his mother at the date of his death, and had contributed nothing for 15 years last past, she had no reasonable prospect of receiving any aid or support from deceased in the future, therefore she suffered no pecuniary loss by reason of his death, and no recovery can be had in her behalf and the request to so charge the jury should have been sustained.

The solution of this question depends upon a consideration of the act creating the cause of action. That act is section 5226, Mansf. Dig. Laws Ark. 1884 (Ind. T. Ann. St. 1899, § 3431), extended over the Indian country by Act Cong. May 2, 1890, c. 182, 26 Stat. 81, and reads as follows:

"Every such action shall be brought by, and in the name of, the personal representatives of such deceased person, and if there be no personal representatives, then the same may be brought by the heirs at law of such deceased person; and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and, in every such action, the jury may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person. Provided, that every such action shall be commenced within two years after the death of such person."

At the common law no right of action accrued to any one for an injury resulting in death. It was therefore the province of the legislative branch of the government, state or national, to create such right of action, to confer it on such persons, to limit the recovery to such amount, and to distribute it to such persons under such limitations as in its wisdom seemed proper. The right of action created by this statute is conferred first on the personal representatives of the deceased. If, as in' this case, there were no personal representatives in existence, then the right of action may be exercised "by the heirs at law of such deceased person for the exclusive benefit of the widow and next of kin." There is in this statute no thought of punishment of the wrongdoer, and the recovery is limited to a just compensation for loss sustained by those for whose benefit the action is' brought, and is to be distributed to the widow and next of kin in the same proportion and the same manner as the law distributes personal property left by the deceased. Therefore, in order to ascertain on whom the law casts the right of action so created, we have only to determine who the heirs at law of the deceased were at the date of his death, and, in order to determine the amount of recovery, to ascertain what the pecuniary loss to the widow and next of kin was by reason of the death. For, if no such loss was sustained by those to whom the law would distribute the recovery when had, it is clear, in such case, there could be no recovery. Swift & Co. v. Johnson, 138 Fed. 867, 71 C. C. A. 619, 1 L. R. A. (N. S.) 1161; Little Rock & Ft. Smith Ry. v. Townsend, 41 Ark. 382; Fordyce v. McCants, 51 Ark. 509, 11 S. W. 694, 4 L. R. A. 296, 14 Am. St. Rep. 69; St. Louis, M. & S. E. Ry. Co. v. Garner, 76 Ark. 555, 89 S. W. 550; Atchison, etc., Co. v. Brown, 26 Kan. 443.·

Section 2592, Mansf. Dig. Laws Ark. 1884 (Ind. T. Ann. St. 1899, § 1880), in force in the Indian country when this death occurred, provides as follows:

"If a husband die leaving a widow and no children, such widow shall be endowed of one-half of the real estate of which said husband died seised, and one-half of the personal estate, absolutely and in her own right."

Section 2522 of the same laws (Ind. T. Ann. St. 1899, § 1820), in force, reads as follows:

"When any person shall die having title to any real estate of inheritance or personal estate not disposed of nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed in parcenary to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following manner: First, to children or their descendants in equal parts. Second, if there be no children, then to the father, then to the mother; if there be no mother, then to the brothers and sisters or their descendants in equal parts."

From which it becomes apparent in this instance both the widow and the mother of the deceased, who died without children or father living, were his heirs at law; and as the right of action here created, in the absence of personal representatives, is cast upon the heirs at law of the deceased, no others can exercise such right. The right of action so created must be exercised by those on whom it is conferred, the heirs at law; the amount recovered to be distributed when recovered to· those for whose benefit the cause of action was created, the widow and

next of kin. As the mother is one of the heirs at law of deceased, and as the heirs at law alone, in the absence of personal representatives, may exercise the right to prosecute this action, the mother is a necessary party plaintiff, notwithstanding she may in her individual capacity have suffered no pecuniary loss by reason of the death of her son, and may in her individual capacity receive no part of any recovery that may be had. She acts here in the capacity of plaintiff in the exercise of this right created by statute, not in her individual capacity as mother of deceased, but in her representative capacity as one of his heirs at law. And she acts not for her individual benefit, but for the benefit of the widow and next of kin. In other words, the right to prosecute the action created by this statute, where none existed at the common law, is conferred upon and must be exercised by those acting in a representative, and not in an individual, capacity, and presumably to the end that the cause of action created might not fail for want of those in esse qualified to prosecute.

In refusing the request preferred by defendant to instruct a verdict against the mother, Mary E. Foreman, and in favor of the defendant, there was no error, if there was evidence sufficient to warrant the jury in returning a verdict against the defendant in favor of plaintiffs.

We shall therefore proceed to a consideration of the remaining question.

This being an action to recover damages for a loss sustained by the death of deceased, husband and son, by reason of the alleged wrongful and negligent acts of defendant, it was incumbent upon plaintiffs, before such recovery could be had, to both allege and prove, not only the cause which operated to produce the death, but, also, that such cause had its origin in some specific and particular negligent act of the defendant, for the result of which it was legally liable.

As said by Mr. Justice Brewer, delivering the opinion of the court in Patton v. Texas & Pacific Railway Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361:

"First. That while in the case of a passenger the fact of an accident carries with it a presumption of negligence on the part of the carrier, a presumption which in the absence of some explanation or proof to the contrary is sufficient to sustain a verdict against him, for there is prima facie a breach of his contract to carry safely (Stokes v. Saltonstall, 13 Pet. 181, 10 L. Ed. 115; Railroad Company v. Pollard. 22 Wall. 341, 22 L. Ed. 877; Gleeson v. Virginia Midland Railroad, 140 U. S. 435, 443, 11 Sup. Ct. 859, 35 L. Ed. 458), a different rule obtains as to an employé. The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employé to establish that the employer has been guilty of negligence. Texas & Pacific Railway v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136. Second. That in the latter case it is not sufficient for the employé to show that the employer may have been guilty of negligence; the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employé is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sym-

pathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."

In this case the fact that the engine, left by the engineer standing some eight or ten feet in front of the car from which the drawhead had been pulled out, did back up quietly while deceased and others were between the rails fastening a chain to the axle of the car, and did in so backing up catch and kill deceased, is known to and admitted by all; but the question presented for determination is: What force operated to move the engine backward, and how was such force applied? Before plaintiffs could be permitted to recover, they must have alleged in what this moving force consisted, and that it was applied because of some negligent act committed by defendant for which it was legally liable to plaintiffs.

As has been seen, plaintiffs charge in their petition such negligent act to have been committed by defendant in one of two ways: Either that defendant negligently permitted the air brakes and appliances to be and remain out of order and in a leaky condition, which caused the brakes to release and the engine to move backward; or that the throttle of the engine was out of order and leaked steam to such an extent as to move the engine backward.

If the efficient cause of the engine's backward movement originated in any act of the engineer himself, or of the fireman who remained on the engine, or in any other person, act, manner, or thing than those acts of negligence charged, plaintiffs may not recover, and it devolves upon the plaintiffs to establish one or both of the negligent acts charged against defendant was the efficient cause of the moving of the engine to the exclusion of all others.

The question now presented is: Did plaintiffs sustain the burden undertaken by them of producing evidence from which the jury was warranted in finding either or both acts of negligence charged was the efficient and proximate cause of the engine moving to the death of deceased? In other words, the evidence found in the record must return an answer to the question, What caused the engine to move? And that answer, when returned, must find either the one or the other, or both, of the negligent acts of defendant charged to exist as a fact, and such finding must be supported by the evidence, or the judgment entered may not stand.

Coming now to a consideration of the evidence as bearing on the question presented, well-known and conceded physical facts must be considered and applied. There is in the record no contradiction of the fact that from milepost No. 419 on defendant's line of road for a distance of ten telegraph poles to the north the grade is an upgrade, the place where the accident occurred was about seven telegraph poles north of milepost 419, the engine in question was running south, downgrade, at the place where the drawhead was pulled out, and the engine was stopped and left by the engineer when he went to assist in chaining the front car of the train to the engine. Suppose, then, it should be found to be true, as charged by plaintiffs, that the air brakes and appliances were out of repair and leaked air sufficient to release the brakes from the engine. What, in the very reason and nature of

things, must have happened when the engine, by the force of its own weight, moved? In compliance with natural laws it must have moved downward and from the train, and not upward and toward it.

Again, it is true, there is evidence in the record that the engine in question on the day of the accident leaked steam at the throttle; but the extent of such leakage is not shown, more than that the engine moved. It is argued, however, from these premises, as the engine did leak steam at the throttle, and as it did move backward, it will be presumed the engine must have leaked steam to such an extent as to show the railway company negligent or it would not have moved backward. This, however, is simply reasoning in a circle without established premises or necessarily correct conclusion, and for this reason: The presumption is that defendant furnished an engine reasonably suitable for the work to be performed by it, with appliances in a reasonably safe condition for use; that is to say, it was not negligent in this regard. This presumption must be overcome by evidence before a recovery can be had on this ground.

Again, the process of reasoning here employed is faulty and illogical, in that it bases the presumption of negligence on a presumption and not on an admitted or established fact; whereas, a presumption of fact must be based on a known or established fact, and can never be founded on another presumption. United States v. Ross, 92 U. S. 281, 23 L. Ed. 707; Manning v. Insurance Co., 100 U. S. 693, 25 L. Ed. 761; Looney v. Metropolitan Railroad Co., 200 U. S. 480, 26 Sup. Ct. 303, 50 L. Ed. 564; United States, etc., Co. v. Des Moines National Bank, 145 Fed. 273, 74 C. C. A. 553. In Douglass v. Mitchell's Ex'rs, 35 Pa. 443, Mr. Justice Thompson stated the rule as follows:

"That as proof of a fact the law permits inferences from other facts, but does not allow presumptions of fact from presumptions. A fact being established, other facts may be, and often are, ascertained by just inferences. Not so with a mere presumption of fact. No presumption can with safety be drawn from a presumption: there being no fixed or ascertained fact from which an inference of fact might be drawn, none is drawn."

See, also: Phila. City Pass. Railway Co. v. Henrice, 92 Pa. 434, 37 Am. Rep. 699; Railway Co. v. Rhoades, 64 Kan. 553, 68 Pac. 58.

Again, it is further shown by the same evidence that all locomotive engines when in use leak steam to a greater or less extent at the throttle. Therefore, if this be true, the mere showing that this engine did leak steam at the throttle, without any showing of the extent, would not support the charge made. The fact is, it cannot be determined from the evidence in this case what caused the engine to move. All the witnesses testifying in the case having any actual knowledge of the condition of the engine at the time of the accident said it was in good condition. The engineer in charge of the engine, as a witness for plaintiffs, testified he set the brakes on the engine, threw the reverse lever, which controls the movements of the engine backward and forward, in the center of the quadrant on which it moves. The evidence further discloses when this lever is in the exact center of the quadrant the application of steam at the throttle will move it in neither direction. When forward of the center, upon the application of steam, the

engine will move forward; or, if backward from the center, the engine will move backward. He further testified it is the duty of the engineer in stopping and leaving his engine to place the reverse lever in the center of the quadrant and set the brakes on the engine, and that he did this. As has been seen, if the air leaked, releasing the brakes, and the engine moved from its own weight, it would have moved forward not backward. If it moved from an application of steam to the cylinder through leaky valves, the reverse lever was not left at the center of the quadrant, but must have been left in reverse motion. However, there is no evidence in this record of the fact that the lever was left in reverse motion. The contrary appears from plaintiffs' own testimony. And if the engineer, contrary to his express testimony, negligently left the lever in reverse motion, there can be no recovery in this case for two reasons: (1) Defendant, as a matter of law, is not liable for such negligence in this case; (2) as such negligence is not charged, defendant was not required to meet it at the trial.

The evidence further disclosed the regular engineer in charge of engine No. 490 was Guy Danforth. That on the day preceding the accident this engine, in charge of Danforth, pulling an empty freight north, took the passing track at Oswego station. That the train was separated at a street crossing running east and west across the passing track to allow vehicles to pass. North of this street, attached to the engine, were some 16 to 18 cars. After the engine, with these cars attached, had been run north to clear the street crossing, had been stopped, and the engineer had climbed down from his engine, the engine with the cars backed up almost closing the gap made between the parts of the train at the street crossing. As shown from the record, this fact was given much weight by the trial court in refusing the request to instruct for defendant. However, Engineer Danforth testified, in regard to this transaction: That he left the engine in the reverse motion; that he released the air brakes in order to take up the slack of the train, and neglected to open the cylinder cocks and thus relieve the pressure in the cylinder heads, which started the engine in the act of backing up; that it was his fault, and not any defect of the engine, that caused it to back up on this occasion. It also appears that the passing track at this place was level or slightly downgrade to the south, from all of which we are of the opinion the conditions present on the 4th of August, the day preceding the accident in this case, were so different in character as to throw no light on the situation out of which the death of deceased arose.

Considering all the evidence found in the record, and giving to it all just inferences derivable therefrom, in our judgment, it was impossible for the jury to determine what caused the engine to move to the destruction of Foreman. Therefore the verdict returned is not supported by sufficient evidence, and the court, in the exercise of sound discretion, should have granted the request to instruct a verdict for defendant. Patton v. Texas & Pacific Ry. Co., supra, and cases cited.

It follows the judgment must be reversed, and the case remanded for a new trial.

It is so ordered.