## WAGNER v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. September 22, 1925.)

### No. 6937.

**1. Searches and seizures ⬅3—Evidence to justify finding of probable cause must be such as would be admissible on trial.**

Evidence to justify finding of probable cause must be such as would be admissible on trial.

**2. Searches and seizures ⬅3—Finding of probable cause cannot be based on suspicions, beliefs, surmises, or mere conclusions.**

Finding of probable cause must be based on facts, and not suspicions, beliefs, surmises, or mere conclusions.

**3. Intoxicating liquors ⬅249—Affidavit for search warrant held insufficient to support finding of probable cause.**

Affidavit for search warrant, "made on the personal knowledge of affiant" (a prohibition agent), by reason of having in his possession a formal affidavit made by a police officer, which set forth a conversation between such officer and defendant, to effect that defendant had on premises involved "two safes which contained bonded liquor, and which are known to be untax-paid," held insufficient on which to base finding of probable cause, under National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), and Espionage Act, tit. 11, §§ 3, 4, and 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼c–10496¼e).

**4. Internal revenue ⬅42—Intoxicating liquors ⬅249—Searches under internal revenue statute subject to same constitutional limitations as searches under Prohibition Act.**

Const. Amend. 4, relating to issuance of search warrants, applies equally to warrants issued under National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) and those issued under internal revenue statute (Rev. St. § 3462 [Comp. St. § 6364]).

**5. Internal revenue ⬅47—Evidence held insufficient to sustain conviction for possession of forged and counterfeit strip stamps.**

Evidence held insufficient to sustain conviction for unlawful possession of forged and counterfeit strip stamps, in imitation of internal revenue engraved strip stamps for use under Act Cong. March 3, 1897 (Comp. St. §§ 6070–6077), in bottling distilled spirits in bond.

**6. Criminal law ⬅563—Corpus delicti must be proved, but proof may be made by circumstantial evidence.**

Corpus delicti must be proved, and cannot be presumed; but proof may be made by circumstantial evidence.

**7. Criminal law ⬅306—Presumption must be based on fact, and not on another presumption.**

Presumption must be based on fact, and not on another presumption.

In Error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Joseph Wagner was convicted of unlawfully possessing forged and fraudulent strip stamps, in imitation of internal revenue engraved strip stamps for use in bottling distilled spirits in bond, and he brings error. Reversed, with instructions to grant new trial.

Anthony P. Nugent, of Kansas City, Mo., for plaintiff in error.

S. M. Carmean, Asst. U. S. Atty., of Kansas City, Mo. (Charles C. Madison, U. S. Atty., and H. L. Donnelly, Asst. U. S. Atty., both of Kansas City, Mo., on the brief), for the United States.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. Plaintiff in error, hereafter called defendant, was tried and convicted under both counts of an indictment charging violation of the Act of Congress approved March 3, 1897 . (29 Stat. 626 [Comp. St. §§ 6070–6077]). The first count charged that on or about the 18th of January, 1922, at Kansas City, Mo., defendant did unlawfully, and with intent to defraud the United States and divers persons, use and have in his possession certain falsely made, forged, and counterfeit strip stamps, in imitation and similitude of and purporting to be internal revenue engraved strip stamps made and used under the provisions of the Act of Congress approved March 3, 1897, in the bottling of distilled spirits in bond, knowing the same to be forged. The second count was of like tenor, except that it charged possession on the 5th day of April, 1924.

We take up first the conviction under the second count. The evidence to support this count was obtained by a search of the premises No. 5301 Cleveland avenue, Kansas City, Mo., the residence of defendant. Defendant challenged all evidence so obtained (1) by timely motion to suppress; (2) by objection to its introduction when offered on the trial; (3) by demurrer interposed to the evidence at the close of all the testimony; (4) by requesting an instruction for a directed verdict in favor of the defendant. The ground for attacking the evidence in each instance was that the search warrant, by means of which the evidence was obtained, was invalid for various reasons, and especially that it was issued without probable cause. The motion, demurrer, and request for an instructed verdict were all ruled upon adversely to the defendant, and those rulings are, covered by assignments of error.

The foundation for the search warrant was an affidavit by B. F. Beazell, a general prohibition agent. It reads as follows:

"United States of America, Western District of Missouri, Western Division—ss.:

"Affidavit for Search Warrant.

"Be it remembered, that on the day and year hereinafter set out, before me, the undersigned, a United States commissioner for the Western division of the Western district of Missouri, came B. F. Beazell and C. D. Brandon, federal prohibition officers, who, being by me duly sworn, deposes and says that a fraud upon the revenue of the United States of America by possession of intoxicating liquors, is being committed in the following manner, to wit:

"That whisky and distilled spirits are now being possessed in violation of the internal (sic) revenue laws, by Joe Wagner, 5301 Cleveland avenue, Kansas City, Missouri, and that there is now on the premises described below distilled spirits upon which no tax has been paid. This affidavit made upon the personal knowledge of affiant, by reason of having in his possession a formal affidavit made by one Alvin J. Reich, police officer, metropolitan police department, Kansas City, Missouri, which sets forth the fact that, while making investigation of the above-named premises, 5301 Cleveland avenue, Kansas City, Mo., said Joe Wagner stated to him personally that he had in his possession two safes which contained bonded liquor, which are known to be untax-paid; Mr. Wagner also stating at that time that he was a dealer in such liquors.

"The said premises above named are more particularly described as a two-story stone building with basement garage and outbuildings; said intoxicating liquor being kept within said buildings, and on said premises, and on the person of those occupying and frequenting said premises, in violation of the internal revenue laws, and same being numbered 5301 Cleveland avenue, and being situated in the city of Kansas City, county of Jackson, state of Missouri, and within the division and district aforesaid.

"B. F. Beazell,
"General Prohibition Agent."

And the search warrant is as follows:

"United States of America, Western District of Missouri, Western Division—ss.:

"Search Warrant.

"To B. F. Beazell and C. D. Brandon, Internal Revenue Officers of the United States of America, for the Western Division of the Western District of Missouri, and to His Agents, Deputies, or Any of Them:

"Whereas, complaint in writing has this day been made before me, George D. Beardsley, for the aforesaid division and district of Missouri, by B. F. Beazell and C. D.

Brandon, alleging and showing that a fraud upon the revenue of the United States is being committed by the *manufacture*, possession, sale, and concealment of and distillation of intoxicating liquors by use of stills, mash, mash tubs, and other equipment for distillation of intoxicating liquors, being the premises of and occupied by Joe Wagner (whose name and description are unknown to affiant) 5301 Cleveland avenue, Kansas City, Missouri, and being situated in the city of Kansas City, county of Jackson, and state of Missouri, and within the division and district aforesaid:

"And whereas, it appearing to me from the complaint that there is probable cause shown to believe that the foregoing grounds for the application exist, and that a fraud is being committed upon the revenue of the United States at the above-described premises by the aforesaid party or parties in violation of the internal revenue laws of the United States:

"Now, therefore, you or any of you are hereby commanded in the name of the President of the United States of America to enter said premises in the daytime or in the night time, with the necessary and proper assistance, and there diligently to investigate and search into and concerning said fraud, and that you seize and secure the said stills, mash, mash tubs, intoxicating liquor, and all utensils used in committing the fraud against the internal revenue laws of the United States, and that you make a return upon this warrant to the undersigned.

"Given under my hand and the seal of my office this 5th day of April, 1924.

"[Signed] George D. Beardsley,
"[Seal.]    United States Commissioner."

It is to be noted that the affidavit by B. F. Beazell states that it is "made upon the personal knowledge of affiant by reason of having in his possession, a formal affidavit made by one Alvin J. Reich." This Reich affidavit, however, was not attached to Beazell's affidavit, nor was it produced before the commissioner. The commissioner testified that no evidence was produced before him except the affidavit of Beazell. This affidavit of Beazell further recites that the affidavit of Reich sets forth a conversation between Reich and defendant to the effect that defendant stated that he had in his possession two safes which contained bonded liquor "which are known to be untax-paid." This, of course, was mere hearsay. Moreover, it is not clear what meaning the words "which are known to be untax-paid" are intended to convey; whether that the

status "untax-paid" was known to Beazell, who makes the affidavit, or known to Reich, whose affidavit is referred to, or known to defendant, who is said to have had the conversation with Reich. In any event, the words quoted state, not a fact, but a mere conclusion.

It is to be noted further that the affidavit alleges only the possession of intoxicating liquors, while the search warrant goes further, and recites the manufacture, sale, and concealment of intoxicating liquor; and the warrant also authorized the seizure of stills, mash, and mash tubs, no one of which was mentioned in the affidavit. It is thus apparent from the record that the only foundation for the search warrant was the affidavit of Beazell, and that, instead of stating facts, it stated merely hearsay and conclusions.

Section 25 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½m) provides amongst other things: "A search warrant may issue as provided in title XI of Public Law numbered 24 of the Sixty-Fifth Congress, approved June 15, 1917." This is commonly known as the Espionage Act (40 Stat. 228). Section 3 of that title reads: "A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼c. Section 4 reads: "The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them." Section 10496¼d. Section 5 reads: "The affidavits or depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist." Section 10496¼e. These statutory provisions have been frequently construed.

[1, 2] The evidence before the judge or commissioner who issues the search warrant must be such as would be admissible on trial. Giles v. United States (C. C. A.) 284 F. 208, 214. The commissioner must be furnished with facts—not suspicions, beliefs, or surmises. Veeder v. United States, 252 F. 414, 164 C. C. A. 338. A mere conclusion is insufficient either in the affidavit or the complaint. United States v. Kaplan (D. C.) 286 F. 963, 969.

[3] Applying the foregoing principles to

the facts in the instant case, we are led to the conclusion that the search warrant was issued without any showing of facts tending to establish probable cause.

[4] This conclusion seems to be conceded by defendant in error, if the search warrant and affidavit are to be tested by the rules relating to affidavits and search warrants' set forth in the Espionage Act and adopted in the National Prohibition Act (41 Stat. 305). But it is claimed that the affidavit and search warrant in the instant case were based, not upon the National Prohibition Act nor the Espionage Act, but upon the internal revenue statutes, and it is claimed, further, that under those statutes facts are not necessary to be set forth in the affidavit to secure a search warrant. Reliance is placed upon section 3462, R. S. (section 6364, C. S.), which reads as follows:

"The several judges of the Circuit and District Courts of the United States, and commissioners of the Circuit Courts, may, within their respective jurisdictions, issue a search warrant, authorizing any internal revenue officer to search any premises within the same, if such officer makes oath in writing that he has reason to believe, and does believe, that a fraud upon the revenue has been or is being committed upon or by the use of the said premises."

It may be noted that though the search warrant in the case at bar purports to be issued to internal revenue officers, yet the affidavit upon which it is based does not purport to be made by an internal revenue officer. We pass this by, however, as not of vital importance.

The broad claim made by defendant in error is that the provision of the Fourth Amendment that "no warrants shall issue, but upon probable cause, supported by oath," has no application to search warrants issued to internal revenue officers. We do not think this contention can be sustained. In our opinion the internal revenue statutes, as well as the National Prohibition Act, are subject to the Fourth Amendment, and are to be so construed as not to conflict therewith.

Section 3462, R. S., approximately in its present form, is found in the Act of July 13, 1866 (14 Stat. 152) c. 184, § 15 (Comp. St. § 6364). By the wording of the section, the issuance of a search warrant would seem to be authorized upon an affidavit by an internal revenue officer that he believes and has reason to believe that a fraud upon the revenue has been or is being committed. But the insufficiency of such an affidavit, following merely the wording of the statute, has been frequently declared.

In 24 Op. Attys. Gen. 685, it was said by the Attorney General in referring to section 3462:

"The section providing for the issue of these search warrants does not state all of that which must be stated in the application therefor. The Fourth Amendment to the Constitution provides that 'no warrant shall issue, but upon probable cause, supported on oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.'"

In Ripper v. United States, 178 F. 24, 101 C. C. A. 152, this court in passing upon an affidavit drawn in accordance with section 3462, R. S., said:

"The affidavit on which the warrant was issued set forth no facts from which the existence of probable cause could be determined; nor did the warrant itself recite the existence of such cause. There was no recital in the warrant that the officer who issued it found or determined there was probable cause, further than the mere statement that some one had declared under oath that he had good reason to believe, and did believe, the accused was violating the law. It is true that section 3462, Rev. St. (U. S. Comp. St. 1901, p. 2283), authorizes a search warrant to be issued upon such an affidavit, but we think that all the requisites are not there expressed. * * * The oath in writing should state the facts from which the officer issuing the warrant may determine the existence of probable cause, or there should be a hearing by him with that purpose in view. The immunity guaranteed by the Constitution should not be lightly set aside by a mere general declaration of a nonjudicial officer that he has reason to believe and does believe, etc. The undisclosed reason may fall far short of probable cause."

In Schencks v. United States, 55 App. D. C. 84, 2 F.(2d) 185, the court, in passing upon an affidavit and search warrant under section 3462, said:

"The Constitution is paramount, and the courts will not permit the evasion of the Constitution by validating writs issued on sworn declarations, which literally comply with the terms of the statute, but which fail to establish probable cause, inasmuch as they state the facts on information and belief or state conclusions of fact or of law, instead of positively alleging the material facts."

To the same effect, see Woods v. United States (C. C. A.) 279 F. 706, 710; United States v. Pitotto (D. C.) 267 F. 603.

Our conclusion is that the search warrant in the instant case, even though it were issued to an internal revenue officer under section 3462, R. S., was not freed from the conditions of the Fourth Amendment to the Constitution. Those conditions not having been fulfilled, the search warrant was invalid. The search warrant being invalid, the evidence seized by virtue thereof was incompetent and should not have been received. Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746; Weeks v. United States, 232 U. S. 383, 396, 398, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 391, 392, 40 S. Ct. 182, 64 L. Ed. 319; Gouled v. United States, 255 U. S. 298, 303, 41 S. Ct. 261, 65 L. Ed. 647.

Counsel for defendant in error seek to support the proposition that section 3462 is not subject to the conditions contained in the Fourth Amendment, by pointing out that a statute similar to section 3462 was passed by the First Congress of the United States prior to the adoption of the Fourth Amendment. There are several answers to such a contention: (1) Whatever the practice may have been under the old statute (Act of July 31, 1789, 1 Stat. 43, c. 5, § 24), yet section 3462, having been passed subsequent to the adoption of the Fourth Amendment, is presumptively subject thereto. (2) The wording of the Act of July 31, 1789, differs materially from that of section 3462, and in our opinion is not open to the construction placed upon it by counsel. (3) No authority is cited to the effect that even under the old statute of 1789 an affidavit such as is involved in the instant case was sufficient. (4) The principles enunciated in the Fourth Amendment were firmly imbedded in the common law prior to the adoption of the Fourth Amendment of the United States Constitution, and the statute of July 31, 1789, was doubtless construed and intended to be construed in accordance with those common-law principles. Cooley on Constitutional Limitations (7th Ed.) pp. 428, 429; Boyd v. United States, 116 U. S. 616, 635, 6 S. Ct. 524, 29 L. Ed. 746; Weeks v. United States, 232 U. S. 383, 390, 391, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177.

[5] Turning to the first count of the indictment, and eliminating from the record the evidence improperly received under the second count, there remains the following evidence relating to the first count: Testimony by three police officers that on or about the 17th of January, 1922, more than two years before the trial, they searched premises in Kansas City, Mo., being "an apartment on the second floor, the front of 1109, The Pasco"; that they had a search warrant. The search warrant was introduced in evidence, and showed that it authorized a search, not of the premises just mentioned, but of the following described premises: "Clarendon Apt., 11th and Paseo, S. E. cor. 3rd floor north front apt." Their further testimony was, however, that they searched the apartment on the second floor and found on the closet shelves quite a few empty gin bottles. They found a trunk in the apartment, which they broke open, and found therein several bottles of gin, two or three pints of whisky, and 150 or 200 revenue stamps; also various liquor labels. All the property so seized was taken to the chief of police. Later in the same day, defendant was arrested at his rooms in the Bellemore Hotel. At the hearing he was discharged. A further witness, Edwards, Chief of police, testified that, on the morning after the seized property had been delivered to him, the defendant came into his office and stated that he had been turned loose in the federal court, and wanted his liquor back. The chief did not know of any liquor held by his department and alleged to be connected with defendant, except the bottles mentioned. Exhibit 1, being one of the strip stamps found in the trunk, was introduced in evidence, and the testimony of one witness was to the effect that it was counterfeit. There was also testimony that the strip stamps attached to the bottles found in the trunk were similar to Exhibit 1. There was no testimony, however, that the strip stamps attached to the bottles were counterfeit. They were neither produced nor accounted for. There was no testimony showing, or tending to show, that defendant occupied the premises, or owned or had possession of the same, or was ever seen there, or owned the trunk found in the apartment. There was no evidence that anything was said about any trunk or the contents thereof, or the apartment which had been searched, at the time when defendant told the chief of police that he wanted his liquor back.

This was the evidence upon which the defendant was found guilty under the first count. Demurrer to this evidence was submitted and overruled. In our opinion it should have been sustained. It must be

borne in mind that the charge against defendant was that he had in his possession, with intent to defraud, counterfeit strip stamps in imitation of the strip stamps used under the provisions of the act of Congress. The only evidence in the record which the prosecution claims connected the defendant with the strip stamps seized was the statement above mentioned, made by the defendant to the chief of police on the day following the seizure.

[6] It is elementary that the corpus delicti—in this case, the possession of the strip stamps—must be proven and cannot be presumed. It may be proven, however, by circumstantial evidence. The fact relied upon to prove this possession is the statement of defendant that he wanted his liquor back. The argument is that it must be presumed that the liquor referred to in the statement by defendant was the liquor which had been seized in the apartment in question. That fact being presumed, it must next be presumed that defendant owned the liquor; the third step is the presumption that he had possession of the liquor; the next step is the presumption that he possessed the trunk in which the liquor was found and the contents thereof, including the counterfeit strip stamps. By this course of reasoning the conclusion is sought to be drawn that defendant had possession of the counterfeit strip stamps with intent to defraud, as alleged in the indictment. We think the course of reasoning is faulty.

[7] It is well established that the basis of a presumption must be a fact, and that one presumption cannot be the basis of another presumption. Wharton on Crim. Evidence (10th Ed.) § 707; 9 Encyc. of Evidence, 880; United States v. Ross, 92 U. S. 281, 23 L. Ed. 707; Manning v. Insurance Co., 100 U. S. 693, 698, 25 L. Ed. 761; United States v. Carr, 132 U. S. 644, 653, 10 S. Ct. 182, 33 L. Ed. 483; Looney v. Met. R. Co., 200 U. S. 480, 488, 26 S. Ct. 303, 50 L. Ed. 564; Cunard S. S. Co. v. Kelley, 126 F. 610, 615, 61 C. C. A. 532; U. S. F. & G. Co. v. Bank, 145 F. 273, 279, 74 C. C. A. 553 (C. C. A. 8); Vernon v. United States, 146 F. 121, 76 C. C. A. 547 (C. C. A. 8); M., K. & T. Ry. v. Foreman, 174 F. 377, 383, 98 C. C. A. 281 (C. C. A. 8); Smith v. Railroad Co., 239 F. 103, 151 C. C. A. 277; Ringrose v. Sloane (D. C.) 266 F. 402.

In view of the foregoing principles, we reach the conclusion that the demurrer to the evidence offered under the first count also should have been sustained.

Judgment is reversed, with instructions to grant a new trial.