## RIPPER v. UNITED STATES. †

(Circuit Court of Appeals, Eighth Circuit. March 16, 1910.)

### No. 2,868.

**1. FOOD (§ 24*)—SEARCHES AND SEIZURES—AFFIDAVIT—PROBABLE CAUSE.**

Const. U. S. amend. 4, provides that a search warrant shall not issue except on probable cause, supported by oath or affirmation particularly describing the place to be searched and the persons or things to be seized, and the fifth amendment declares that no person shall be compelled to be a witness against himself nor be deprived of life, liberty, or property without due process of law. *Held*, that Rev. St. § 3462 (U. S. Comp. St. 1901, p. 2283), authorizing federal circuit and district judges and commissioners of the Circuit Courts to issue search warrants, does not express all the requisites of an affidavit for such warrant, and that such an affidavit merely alleging that the officer had good reason to believe, and did believe, that accused was unlawfully engaged in manufacturing oleomargarine on the premises described, and praying the issuance of a warrant, was fatally defective for failure to state facts from which the officer issuing the warrant might determine the existence of probable cause.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

**2. CRIMINAL LAW (§ 394*)—EVIDENCE ILLEGALLY OBTAINED.**

Where testimony offered against accused was itself relevant, and there was no attempt to compel him to testify against himself or produce his private papers or effects, the evidence was not inadmissible because obtained by an illegal search and seizure.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 875, 876; Dec. Dig. § 394.*]

**3. INTERNAL REVENUE (§ 39*)—OLEOMARGARINE—EMPTY PACKAGE—POSSESSION—STAMPS—NEGLECT TO DESTROY.**

Act Aug. 2, 1886, c. 840, § 13, 24 Stat. 211 (U. S. Comp. St. 1901, p. 2232), provides that, whenever any stamped package containing oleomargarine is emptied, the person in whose hands the same is shall destroy utterly the stamp thereon, and any person who willfully neglects or refuses to do so shall be fined. It also provides that any revenue officer may destroy any empty oleomargarine package on which a tax-paid stamp is found. *Held* that, in order to constitute the offense of neglect or refusal to destroy the stamp from an emptied oleomargarine package, it need only appear that the package had a stamp on it denoting the payment of a tax; that it was emptied of its contents; that it was in defendant's possession in its emptied condition; and that he willfully neglected or refused to destroy the stamp while the empty package was in his possession; and hence an indictment for such offense was not defective for

failure to charge that the package was emptied while in defendant's possession.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 39.*]

4. FOOD (§ 14*)—OLEOMARGARINE—"RETAIL DEALER."

Act Aug. 2, 1886, c. 840, 24 Stat. 209 (U. S. Comp. St. 1901, p. 2228), regulating the sale of oleomargarine, authorizes three classes of persons to conduct the business of manufacturing and selling oleomargarine, viz., the manufacturer is authorized to sell his own products in his place of business in his own packages with stamps denoting payment of the tax on the contents, the wholesale dealer is defined to be one permitted to sell in the manufacturer's original packages, and the retail dealer, one who sells in less quantities than ten pounds at one time; and section 6 declares that retail dealers must sell only from original stamped packages in quantities not exceeding 10 pounds. *Held*, that the restriction on retail dealers violates no constitutional right, and that persons selling oleomargarine at retail in original packages in quantities greater than ten pounds at any one time are violaters of the law, and do not form a class outside its provisions.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 14.*

For other definitions, see Words and Phrases, vol. 7, p. 6195.]

5. FOOD (§ 16*)—OLEOMAGARINE—RETAIL SALE—PENALTIES.

The penalty prescribed in Oleomargarine Act Aug. 2, 1886, c. 840, § 6, 24 Stat. 210 (U. S. Comp. St. 1901, p. 2230), does not apply to that part of the section prohibiting retailers from selling in quantities exceeding 10 pounds, such offense being subject to punishment by a fine of $1,000 without imprisonment, as prescribed by section 18.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 16.*]

In Error to the District Court of the United States for the Eastern District of Missouri.

John A. Ripper was convicted of violating the Oleomargarine Act, and he brings error. Affirmed.

Walter N. Davis and Henry M. Johnson (Horace L. Dyer, on the brief), for plaintiff in error.

Charles H. Daues, Asst. U. S. Atty. (Henry W. Blodgett, U. S. Atty., on the brief), for the United States.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

HOOK, Circuit Judge. John A. Ripper was convicted of violations of Act Aug. 2, 1886, c. 840, 24 Stat. 209 (U. S. Comp. St. 1901, p. 2228), commonly known as the "Oleomargarine Act." The indictment contained two counts. The sentence under the first was a fine of $50 and imprisonment for six months, and under the second a fine of $250 and imprisonment for six months. The terms of imprisonment were concurrent. By the first count, which was framed under section 13 of the act, the accused was charged with having in his possession an empty package which had theretofore contained colored oleomargarine, and had been emptied of its contents, the tax-paid revenue stamp upon which he had willfully neglected and refused to destroy.

Complaint is made that the court erred in admitting the testimony of revenue officers as to what they discovered in the house of the ac-

cused because they gained admission by means of a void search warrant. Love, a revenue agent, made an affidavit before a United States commissioner that he had good reason to believe and did believe that the accused was unlawfully engaged in the business of manufacturing oleomargarine with intent to defraud the United States of a part of its revenue, and he prayed the issue of a search warrant authorizing him to enter and search the premises of the accused which were described, and if any materials used in coloring oleomargarine were found to seize them for trial. The commissioner thereupon issued a search warrant reciting the purport of the affidavit. The search was made by the revenue officers, and their testimony as to what they found was admitted over the objection of the accused. The objection made was that the constitutional rights of the accused under the fourth and fifth amendments to the Constitution were violated by the search and seizure, and, therefore the evidence so discovered was inadmissible. The fourth amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The fifth amendment, so far as relevant, is:

"Nor shall (any person) be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law."

The affidavit on which the warrant was issued set forth no facts from which the existence of probable cause could be determined; nor did the warrant itself recite the existence of such cause. There was no recital in the warrant that the officer who issued it found or determined there was probable cause, further than the mere statement that some one had declared under oath that he had good reason to believe, and did believe, the accused was violating the law. It is true that section 3462, Rev. St. (U. S. Comp. St. 1901, p. 2283), authorizes a search warrant to be issued upon such an affidavit, but we think that all the requisites are not there expressed. This was also the view of the Attorney General in an opinion delivered June 19, 1903 (24 Ops. Attys. Gen. 685, 688). The oath in writing should state the facts from which the officer issuing the warrant may determine the existence of probable cause, or there should be a hearing by him with that purpose in view. The immunity guaranteed by the Constitution should not be lightly set aside by a mere general declaration of a nonjudicial officer that he has reason to believe and does believe, etc. The undisclosed reason may fall far short of probable cause. But though the search warrant may have been improvidently issued, it does not follow that the testimony of the revenue officers was inadmissible. The testimony itself, was relevant; there was no attempt, as in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, to compel the accused to testify against himself or to produce his private papers or effects, and a court will not stop to try whether the knowledge of the officers who testify was gained by a trespass. Adams v. New York, 192 U.

S. 585, 21 Sup. Ct. 372, 48 L. Ed. 575; Hardesty v. United States, 91 C. C. A. 1, 164 Fed. 420; Hartman v. United States, 94 C. C. A. 124, 168 Fed. 30; United States v. Wilson (C. C.) 163 Fed. 338.

It is also urged that the first count of the indictment is fatally defective because it merely charges that the accused had in his possession an empty package which previously contained colored oleomargarine, and willfully neglected and refused to destroy the stamp thereon, whereas to constitute an offense under the statute the package must have been emptied of its tax-paid contents while in his possession. In other words, it is contended that mere possession of such a package and willful neglect or refusal to destroy the stamp is insufficient. We considered this question in Vermont v. United States (C. C. A.) 174 Fed. 792, and held there were four elements of an offense under the first clause of section 13 of the act: (1) The package must have had a stamp on it denoting the payment of a tax; (2) it must have been emptied of its tax-paid contents; (3) it must have been in that emptied condition in the possession of defendants, and (4) they must have willfully neglected or refused to destroy the stamp while the empty package was in their possession.

The section is as follows:

"Section 13. That whenever any stamped package containing oleomargarine is emptied, it shall be the duty of the person in whose hands the same is to destroy utterly the stamps thereon; and any person who wilfully neglects or refuses so to do shall for each such offense be fined not exceeding fifty dollars, and imprisoned not less than ten days nor more than six months. And any person who fraudulently gives away or accepts from another, or who sells, buys, or uses for packing oleomargarine, any such stamped package, shall for each such offense be fined not exceeding one hundred dollars, and be imprisoned not more than one year. Any revenue officer may destroy any emptied oleomargarine package upon which the tax-paid stamp is found."

That the duty to destroy the stamp attaches when the package is emptied and to every person into whose hands it comes in that condition is a construction that accords with both the letter of the law and the purpose of preventing frauds upon the revenue. Nor does it argue against this construction that the same section makes it an offense punishable by more severe penalties for any one fraudulently to give away or accept from another or to sell, buy, or use for packing oleomargarine, any such stamped package. The presence of a fraudulent element is an appropriate reason for more severe punishment than is prescribed in the case of mere possession with willful neglect or refusal to destroy the stamp. The provision in question is a common one in revenue legislation. Section 3406, Rev. St. (U. S. Comp. St. 1901, p. 2226), provides that:

"Whenever any stamped box containing cigars, cheroots, or cigarettes is emptied, it shall be the duty of the person in whose hands the same is to destroy utterly the stamps thereon."

The same provision is found in the act taxing filled cheese (Act June 6, 1896, c. 337, 29 Stat. 256, § 14 [U. S. Comp. St. 1901, p. 2240]); and in the act taxing mixed flour (Act June 13, 1898, c. 448, 30 Stat. 469, § 45 [U. S. Comp. St. 1901, p. 2245]) there is a provision very similar. The provision with respect to empty tobacco and snuff pack-

ages requires the stamps to be destroyed "by the person in whose hands the same may be." Rev. St. § 3376 (U. S. Comp. St. p. 2207). Had Congress intended the law should be as claimed, it would in simple and direct terms have imposed the duty to destroy the stamp upon him who empties the package or causes it to be emptied of its tax-paid contents. An empty package with intact stamp is in itself an outlaw, and the same section authorizes any revenue officer to destroy it. Doubtless Congress intended to lessen the opportunities for frauds on the revenue by punishing the possession by any one of an empty package when accompanied by willful neglect or refusal to destroy the stamp, and also to punish by more severe penalties when possession is fraudulently acquired, or such packages are trafficked in or again used in packing oleomargarine.

The second count charges that the accused, being a retail dealer, sold more than 10 pounds of oleomargarine in pound prints at one time to a purchaser named. Section 6 of the act provides that "retail dealers in oleomargarine must sell only from original stamped packages, in quantities not exceeding ten pounds." The act requires manufacturers of oleomargarine to pack their product in packages each containing not less than 10 pounds. Three classes of persons are authorized to conduct the business of selling the manufactured product and a tax is imposed on each. The manufacturer may sell his own product, at his place of business, in the original packages with stamps affixed denoting payment of the tax on the contents. A wholesale dealer is defined to be one who sells or offers for sale in original manufacturers' packages, and a retail dealer one who sells in less quantities than 10 pounds at one time. In making sales the latter is necessarily allowed to break the bulk of the manufacturer's original stamped package and to sell from it. The accused, who was a retail dealer, sold a purchaser at one time 24 pounds of oleomargarine in one-pound prints. It is now claimed that the act does not prohibit those who are neither manufacturers nor wholesale or retail dealers from selling more than 10 pounds from original packages, and there is, therefore, a class of persons outside the law who, by refraining from selling in original packages or in quantities of 10 pounds or less from such packages, may traffic in the manufactured product with impunity. Upon this assumption counsel contend that the restriction upon the retailer to 10 pounds or less violates the "fundamental, inherent and natural rights" of the citizen guaranteed by the Constitution; that it has no effect in preventing frauds on the revenue, and is, therefore, an unlawful assumption by Congress of a police power. But the assumption of counsel is without foundation. The act of August 2, 1886, and the sections of the Revised Statutes adopted by it and made applicable, mean that oleomargarine shall only be sold in the manner and according to the regulations prescribed. Were it otherwise, however, the conclusion of counsel would by no means follow. Congress has a wide discretion in selecting the subjects of taxation within its province, and in prescribing regulations to facilitate the collection of internal revenue and to prevent frauds thereon, which will not be supervised by the courts. Veazie Bank v. Fenno, 8 Wall. 533, 19 L. Ed.

482; Treat v. White, 181 U. S. 264, 21 Sup. Ct. 611, 45 L. Ed. 853; Felsenheld v. United States, 186 U. S. 126, 22 Sup. Ct. 740, 46 L. Ed. 1085; McCray v. United States, 195 U. S. 27, 24 Sup. Ct. 769, 49 L. Ed. 78.

The court sentenced the accused under the second count to both fine and imprisonment. The penal clause of section 6 which was probably applied does not, however, relate to the provision in the same section that retail dealers must sell only in quantities not exceeding 10 pounds. Section 18 seems to be applicable in such a case. The penalty there prescribed is $1,000 without imprisonment. The accused does not complain the fine of $250 is too small. The imprisonment of 6 months imposed under the second count was not authorized by section 18, but as it runs concurrently with a like term under the first count no prejudice results. Affirmed.