## SCHENCKS v. UNITED STATES.

(Court of Appeals of District of Columbia.
Submitted October 6, 1924. Decided
November 3, 1924.)

No. 3936.

**1. Searches and seizures ⟨⟩3—Affidavits stating facts on information and belief is insufficient.**

Under Const. U. S. Amend. 4, affidavit of police officer stating facts on information and belief is not sufficient for issuance of warrant, notwithstanding Rev. St. § 3462 (Comp. St. § 6364).

**2. Searches and seizures ⟨⟩3—Police officer's affidavit should state facts known to him of own knowledge, on which he bases his conclusion that search and seizure ought to be made.**

Under Const. U. S. Amend. 4, police officer should state in affidavits facts known to him of his own knowledge, which led him to the conclusion that search or seizure ought to be made; statement of legal conclusion being insufficient, notwithstanding Rev. St. § 3462 (Comp. St. § 6364).

**3. Searches and seizures ⟨⟩3—Police officer's affidavit should state facts of which he has personal knowledge, and not facts of which he has been informed by others.**

Police officer's affidavit should state facts known to him of his own knowledge, and not facts of which he has been informed by another, in which case the officer should secure affidavit of such other person as to such facts, and on other person's refusal to make affidavit he should be subpœnaed to appear before the judge or commissioner to give testimony as to truth of statements made to officer.

**4. Criminal law ⟨⟩393(2)—Evidence obtained by means of illegal search warrant is inadmissible.**

Articles seized under illegally issued search warrant, in violation of Const. U. S. Amend. 4, are not admissible over defendant's objection, in view of Amendment 5.

**5. Criminal law ⟨⟩789(1)—Defendant entitled to charge defining reasonable doubt.**

Defendant charged with sale of narcotics, *held* entitled to charge defining reasonable doubt.

Appeal from Supreme Court of the District of Columbia.

Maude P. Schencks, otherwise known as Maude Briscoe, was convicted of selling narcotics, and of selling narcotics in other than original stamped packages, and she appeals. Reversed and remanded.

T. M. Wampler, of Washington, D. C., for appellant.

Peyton Gordon, O. E. Koegel, and John H. Burnett, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. On the 5th day of April, 1922, the United States commissioner for the District of Columbia issued a search warrant directing Samuel L. Rakusin, a federal narcotic inspector, to make a search of premises occupied by Leon Schencks and Maude Briscoe, and to seize if found all opium, cocaine, coca leaves, and preparations and derivatives thereof, together with marked money as well as goods, wares, and merchandise subject to seizure under the internal revenue laws of the United States. That warrant was issued on the affidavit of Samuel L. Rakusin and Robert A. Sanders. Rakusin deposed that he had reason to believe and did believe that a fraud upon the revenue laws had been or was in course of being committed in respect to narcotic drugs at 448 First street N. W., Washington, D. C., premises then or recently occupied by Leon Schencks and Maude Briscoe; that the reason for his belief was that on March 9, 1922, a bottle of cocaine was purchased from Maude Briscoe by John Redyns on said premises; that the articles to be seized were morphine and opium, cocaine, and derivatives of opium and coca leaves. Sanders deposed in his affidavit that he was informed by John Redyns that on March 9, 1922, at the premises 448 First street S. W., Washington, D. C., then occupied by Leon Schencks and Maude Briscoe, he, said John Redyns, purchased from Maude Briscoe one vial of cocaine, and paid her therefor the sum of $2. Neither of the affidavits stated that the money paid for the cocaine was marked. John Redyns made no affidavit, and the record does not disclose that Redyns appeared before the commissioner, or that Redyns declared under oath that he (Redyns) had purchased on said premises any cocaine or other drugs from Maude Briscoe or any other person. The search warrant was executed by Samuel L. Rakusin, and he seized on or about the premises specified in the warrant 17 vials of cocaine, a number of capsules containing cocaine, two marked $1 bills, a round paper box, a handkerchief, $497 in bills, $30 in gold, and various articles of jewelry valued at $650.

On the 28th of April, 1922, the grand jury returned an indictment containing five counts, which charged Maude P. Schencks, otherwise known as Maude Briscoe, with violating what is commonly known as the Harrison Anti-Narcotic Act (Comp. St. § 6287g–6287q). On that indictment Maude P. Schencks was on the 20th of June, 1922,

brought to trial before the Supreme Court of the District of Columbia and a jury duly impaneled, whereupon a motion was made to quash the search warrant on the ground that it was void, inasmuch as there was no reasonable or probable cause shown for its issuance. The court denied the motion to quash, and the defendant excepted.

During the progress of the trial, and over the objection and exception of the defendant, testimony was introduced by the prosecution as to the articles seized under the search warrant, and all of such articles, except the $497 in bills, the $30 in gold, and the jewelry, were, subject to like objection and exception, admitted in evidence against the defendant.

The jury returned a verdict of not guilty on the first, second, and third counts, but found the defendant guilty on the fourth and fifth counts, which charged that the defendant sold narcotics, and sold narcotics in other than original stamped packages. On the verdict returned the defendant was sentenced to imprisonment for five years in a penitentiary to be designated by the Attorney General, and from that judgment the appeal now under consideration was taken.

The Fourth Amendment to the Constitution prescribes in terms that cannot be mistaken that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and that no warrants shall issue, *but upon probable cause,* supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. The principle of that amendment found favor with the American people a long time before they thought of a Declaration of Independence, a Confederation of States, or a Constitution which would secure their property, their persons, and their homes against unwarranted invasion.

The colonists had no objection to searches and seizures which were ordered upon reasonable grounds for the enforcement of the laws of the land and which the public welfare demanded. They had been taught, however, by the writs of assistance, which met with scant approval even in England, that police officers could not be safely intrusted with unchecked and unrestricted powers to have their will with the person, the property, or the home of the citizen, and they resented with all their souls the issuance of process which left no one responsible for wrongful or unjustified intrusions on their privacy and their personal and property rights. Indeed, it is not too much to say that of all the causes which led to the Revolution against the mother country, to which the colonies were bound by ties of blood and cherished traditions, nothing more excited the spirit of revolt than unreasonable searches and seizures made under color of law.

When the colonies acquired by force of arms the right to govern themselves, the people did not forget the galling oppressions to which they had been subjected by loosely granted search and seizure writs. They therefore demanded and finally obtained the Fourth Amendment, which was designed to prevent their official servants from becoming their arbitrary and irresponsible masters under the guise of law.

[1-3] The federal courts have most jealously guarded the rights secured to the people under that amendment, and have uniformly held that its purpose cannot be evaded by the issuance of writs on sworn declarations which would permit the person or persons making them to escape responsibility therefor. A sworn statement that a person is informed and believes, or has reason to believe and does believe, that certain facts exist, is not a positive statement that they do exist, or that they are true, and leaves no one responsible for a search or seizure, in case the information of the affiant or deponent should prove to be incorrect, or in case there should be no sound basis for his belief. If the peace officer has reason to believe and does believe that a search or seizure ought to be made, he should state in his affidavit the facts which led him to that conclusion, and which were known to him of his own knowledge. If he has no first-hand information as to the material facts, but has been informed by another as to facts or conditions which would justify the issuance of process for search or seizure, the officer should secure the informer's affidavit positively alleging of the latter's own knowledge the existence of such facts or conditions. In the event that the informer is unwilling to make such an affidavit, he should be subpœnaed to appear before the judge or commissioner to give testimony as to the truth of the statements made by him to the officer.

Peace officers, to their credit be it said, zealously endeavor as a rule to bring lawbreakers to justice, but unfortunately they are easily satisfied as to the guilt of an accused, although having no legal evidence

to convict. To permit them to search for evidence because they deposed that they had reason to believe and did believe that the law had been broken, or because they deposed that they were *informed and believed* that certain facts existed, would leave the home, the property, and the person of the citizen at the mercy of mere suspicion, and of misstatements and misinformation for which no one could be held accountable. It is true that section 3462 of the Revised Statutes (Comp. St. § 6364) does provide that a search warrant may be issued if a revenue officer makes oath in writing "that he has reason to believe, and does believe, that a fraud upon the revenue has been or is being committed upon or by the use of the said premises"; but that does not authorize the issuance of a warrant on an affidavit which would result in defeating the purpose of the Fourth Amendment.

The Constitution is paramount, and the courts will not permit the evasion of the Constitution by validating writs issued on sworn declarations, which literally comply with the terms of the statute, but which fail to establish probable cause, inasmuch as they state the facts on information and belief or state conclusions of fact or of law, instead of positively alleging the material facts. Ripper v. United States, 178 F. 24–26, 101 C. C. A. 152; United States v. Ray (D. C.) 275 F. 1004–1006; Veeder v. United States, 252 F. 414, 418, 420, 164 C. C. A. 338; Boyd v United States, 116 U. S. 624–630, 6 S. Ct. 524, 29 L. Ed. 746. To hold otherwise would reduce search warrants to the status of the old writs of assistance, and would fritter away the rights guaranteed by the Fourth Amendment, thereby giving free rein to abuses, hateful to a form of government which is intolerant of the arbitrary and irresponsible exercise of power.

We must hold, therefore, that affidavits or depositions which simply state that the affiant or deponent has reason to believe and does believe that a crime has been or is in course of being committed, or which go no farther than to allege conclusions of law or of fact, or which set out on mere information and belief the material facts on which the right to search or seize is based, are insufficient to support a search warrant, and any search warrant issued on such affidavits or depositions is invalid. Ripper v. United States, 178 F. 24–26, 101 C. C. A. 152; Veeder v. United States, 252 F. 414, 418, 420, 164 C. C. A. 338; Salata v. United States (C. C. A.) 286 F. 125, 126; United States v. Pitotto (D. C.) 267 F. 603, 604; United States v. Rykowski (D. C.) 267 F. 866, 869; Giles v. United States (C. C. A.) 284 F. 208, 212–214; Gouled v. United States, 255 U. S. 298, 308, 309, 41 S. Ct. 261, 65 L. Ed. 647.

[4] The federal courts have emphatically held that the admission of property or papers taken from a defendant in violation of his constitutional rights virtually makes him a witness against himself, contrary to the provisions of the Fifth Amendment, and is reversible error. Salata v. United States (C. C. A.) 286 F. 125, 126; Boyd v. United States, 116 U. S. 616, 630, 6 S. Ct. 524, 29 L. Ed. 746; Weeks v United States, 232 U. S. 383, 396, 398, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 391, 392, 40 S. Ct. 182, 64 L. Ed. 319; Gouled v. United States, 255 U. S. 298, 303, 304, 306, 311, 312, 313, 41 S. Ct. 261, 65 L. Ed. 647. As the search warrant was illegally issued, the articles and things seized thereunder were taken in violation of defendant's constitutional rights, and the admission of them over objection as evidence against her was error.

[5] The defendant requested the court to define reasonable doubt, and to give to the jury the judicially accepted instruction as to the meaning of reasonable doubt. The court refused to give the instruction as presented by the defendant, and to that the defendant excepted. We have examined the charge given by the trial court, and while we find a carefully prepared instruction as to the presumption of innocence, we find no definition of reasonable doubt. The instruction asked for or its equivalent should in our opinion have been given. Eagan v. United States, 52 App. D. C. 384, 393, 287 F. 958.

The judgment is reversed, and the case remanded for a new trial.