## RAFTERY ex rel. HUIE FONG v. BLIGH et al.

### No. 2580.

Circuit Court of Appeals, First Circuit.
Jan. 19, 1932.

Essex S. Abbott, of Boston, Mass. (John P. Feeney and Joseph V. Carroll, both of Boston, Mass., and Edward F. Flynn, of Lynn, Mass., on the brief), for appellant.

George B. Lourie, Asst. Atty. Gen. (Joseph E. Warner, Atty. Gen., and Stephen D. Bacigalupo, Asst. Atty. Gen., on the brief), for appellees.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

BINGHAM, Circuit Judge.

This is an appeal from a decree of the District Court for Massachusetts, dismissing a petition for a writ of habeas corpus and remanding the petitioner to custody.

March 2, 1931, Ed. J. Goff, attorney for Hennepin county in the state of Minnesota, applied to the Governor of that state for a requisition upon the Governor of the state of Massachusetts for Huie Fung, stating that he stood charged by complaint with the crime of murder in the first degree committed in the county of Hennepin, in said state, on the 8th day of June, 1930, and was a fugitive from the justice of the state and now in Massachusetts; that the fugitive was under arrest; that all the papers submitted with the application had been compared, were in triplicate, and were in all respects exact counterparts; that there was attached to his application a true and correct copy of the complaint, a correct copy of the warrant of arrest issued on the complaint, a copy of the statute upon which the charge against the accused was based, defining said crime and the pre-

scribed punishment therefor; and requested that James L. Mullen, a police officer of the city of Minneapolis, be appointed as agent to act for the state in the matter.

On March 3, 1931, the Governor of Minnesota issued a demand on the Governor of Massachusetts, in which he stated:

"Whereas it appears by complaint and affidavits (a copy whereof is hereunto attached and which I certify to be authentic and duly authenticated in accordance with the laws of this State) that Huie Fung stands charged with the crime of murder in the first degree committed in the County of Hennepin in this State, (which I certify to be a crime under the laws of this State) and it having been presented and satisfactorily shown to me that said Huie Fung since the commission of said offense has fled from the justice of this State and now is a fugitive from the justice thereof, and may have taken refuge in the State of Massachusetts,

"Now, therefore, pursuant to the provisions of the constitution and laws of the United States in such case made and provided I do hereby request that the said Huie Fung be apprehended and delivered to James L. Mullen who is hereby appointed agent to convey him to the State of Minnesota there to be dealt with according to law."

March 24, 1931, the Governor of Massachusetts issued his warrant, in which, after reciting that it had been represented to him by the Governor of Minnesota that Huie Fung was charged in that state with the crime of murder in the first degree, who certified the same to be a crime under the laws of that state committed in Hennepin county in said state, that he was a fugitive from justice, that a demand "pursuant to the Constitution and Laws of the United States" had been made by the Governor of Minnesota for the arrest and delivery of Huie Fung to James L. Mullen as agent; and further stating that the representation and demand were accompanied "by certain documents whereby the said Huie Fung is shown to have been duly charged with the said crime and to be a fugitive from the justice of the State of Minnesota, and to have taken refuge in this Commonwealth, which documents are certified by the governor of the State of Minnesota to be authentic and duly authenticated," the warrant concludes: "Wherefore, you are required to arrest and secure the said Huie Fung, wherever he may be found within this Commonwealth and afford him [an] opportunity to sue out a writ of habeas corpus, * * * and thereafter deliver him into the

custody of the said James L. Mullen to be taken back to the state of Minnesota from which he fled."

Among the documents accompanying the demand and attached thereto was a copy of a complaint subscribed and sworn to by James L. Mullen (a police officer of Minneapolis and a deputy sheriff of Hennepin county) before the judge of the municipal court of the City of Minneapolis, in Hennepin county, Minn., which complaint in substance states that on the 8th day of June, 1930, within the corporate limits of the city of Minneapolis, Hennepin county, Minn., Huie Fung, then and there being armed with a revolver loaded with gun powder and leaden bullets, then and there feloniously, intentionally, without excuse or justification, without authority of law, and with premeditated design to effect the death of a human being, one Woo Sam, did kill and murder the said Woo Sam by discharging said revolver into the body of Woo Sam, inflicting a mortal wound of which the said Woo Sam thereafter died on the 9th of June, 1930.

An affidavit of facts and circumstances in support of the complaint, subscribed and sworn to by James A. Mullen before the judge of said municipal court, also accompanied and was attached to the demand, in which it was stated: "That the circumstances and facts showing the commission of the crime charged in the complaint against Huie Fung are as follows: That affiant now is and for forty-five years has been a resident of the City of Minneapolis, County of Hennepin, State of Minnesota. That affiant now is and for seventeen years has been a police officer of the City of Minneapolis, County of Hennepin, State of Minnesota. That on June 8, 1930, at about 11.30 p. m., one Woo Sam, a Chinaman, was shot in front of 1122 Seventh Street South, in the City of Minneapolis, Hennepin County, Minnesota; that said Woo Sam lived at and conducted a laundry at said 1122 Seventh Street South in said City of Minneapolis; that said Woo Sam had been visiting at Number 715 Third Avenue South in said City of Minneapolis, and was on his way home; that as said Woo Sam arrived in front of said 1122 Seventh Street South, an automobile, with three men therein, stopped in front of said 1122 Seventh Street South, and said Huie Fung stepped out of the said automobile, walked up to Woo Sam and when he, said Huie Fung, was near said Woo Sam, said Huie Fung began to shoot at said Woo Sam, shooting five times and five bullets hit said Woo Sam; that said Woo Sam dropped to the sidewalk and said Huie Fung then ran to the automobile and

was driven away; that said Woo Sam had known said Huie Fung for eight years and was positive that the man who shot him was Huie Fung; that said Woo Sam was taken to the General Hospital of the said City of Minneapolis, where he, the said Woo Sam, died on the ninth day of June, 1930, from the gun wounds so inflicted by said Huie Fung; that said Woo Sam, just before he died, knowing that he was going to die and was dying, made his dying statement in writing stating the facts as herein made and signing said statement in the presence of witnesses; that a true and correct copy of the dying statement of said Woo Sam is hereto attached and made a part hereof. That said Huie Fung immediately left the City of Minneapolis, County of Hennepin, State of Minnesota; that the whereabouts of said Huie Fung was not known until February 28, 1931; that said Huie Fung is now in the City of Boston, Massachusetts." ·

The copy of the dying declaration of Woo Sam attached to the affidavit is in question and answer form. It was given by Woo Sam in the presence of Frank Forestal, James L. Mullen, and W. S. Wood, and, upon being transcribed, was signed by Woo Sam in their presence, who attested his signature. It appears to have been taken in the General Hospital, to which Woo Sam had been removed, at 12.30 a. m. June 9, 1930, the day on which it is alleged in the complaint that Woo Sam died, and about one hour after he was shot. It reads as follows:

"What is your name? A. Woo Sam. Q. Where do you live? A. 1122 7th St. So. Q. How old are you? A. 55. Q. What is your business? A. Laundry. Q. At 11.15 p. m. June 8th you were shot at 11th St. & 7th Ave. So., do you know who shot you? A. Huie Fung. Q. Did he say anything to you before he shot you? A. Nothing. Q. Was there anyone with him? A. Two or three. Q. How close was he to you when he shot you? A. Right by me, not over a foot or two away. Q. Did you see what kind of a gun he had? A. No. Q. How long have you known Huie Fung? A. Seven or eight years. Q. You are positively sure it was Huie Fon who shot you? A. Yes. Q. Did they drive away in a car or walk away? A. He got out of car, shot and ran back to car again and drove away. Q. Was anything said after he shot? A. Nothing. Q. There is no question in your mind but what it was Huie Fon who shot you? A. There is no question in my mind but that was Huei Fun. Q. Did any of the other fellows get out of the car when the shooting took place? A. Only

Huei Fun. Q. Do you know that you are going to die? A. Yes. Q. This is a true statement of facts that you have given us? A. Yes. Q. Are you willing to sign this after it has transcribed into typewritten form and you have had a chance to read it? A. Yes."

The demand of the Governor of Minnesota was also accompanied by and had attached thereto two further affidavits; one subscribed and sworn to by Ark Sing, before the judge of said municipal court, in which the affiant stated that he had been a resident of the city of Minneapolis for five years; that for over four years he had been the owner of and conducted a laundry at 702 Sixth Avenue North in that city; that he had known Huie Fung for five years; that on the 3rd day of June, 1930, he saw Huie Fung walking on the sidewalk opposite his laundry in the city of Minneapolis and watched him walk up the street. There is a picture attached to the affidavit, taken in two postures, shown to have been taken of the relator after his arrest in Massachusetts, and the affiant states that the picture attached and made a part of his affidavit is a true and correct picture of Huie Fung. The other accompanying affidavit is sworn to by Dong Toy before the judge of said municipal court. In this the affiant states that he is and for ten years has been a resident of Minneapolis, and now is and for three years has been the owner of and conducted a laundry at No. 614 Seventh Street South in Minneapolis; that he has known Huie Fung for ten years; that on June 8, 1930, he saw Huie Fung in an automobile with two other Chinamen, said Huie Fung being in the back seat, and one of the other Chinamen driving; that Huie Fung with the other two Chinamen drove past the affiant's laundry twice; and that the picture attached to his affidavit, which is the same picture taken in two postures and attached to the affidavit of Ark Sing, is a true and correct picture of Huie Fung.

The petition for writ of habeas corpus, filed March 5, 1931, is brought by Mae E. Raftery at the relation of Huie Fong against Joseph L. Ferrari and Thomas E. Bligh. In it she complains that Huie Fong, otherwise known as Hong Foo, is unlawfully restrained of his liberty by the respondents under a warrant issued by the Governor of Massachusetts; that said Huie Fong, otherwise known as Hong Foo, is not the person designated in said warrant and held under the authority thereof; that said warrant does not purport to authorize the arrest and detention of Huie Fong, otherwise known as Hong Foo; and that Huie Fong, otherwise

known as Hong Foo, is not the person alleged to have committed the crime set forth in the demand upon which the warrant of the Governor of Massachusetts issued.

A writ of habeas corpus having issued on said petition for the production of the body of relator, the writ was served and the respondents brought him into court and filed an answer and return. In the answer and return the respondent Bligh denied that he had the relator in custody and denied each and every other allegation of the petition. The respondent Ferrari answered that he was a state police officer of Massachusetts authorized to serve warrants in criminal cases; that the relator was in his lawful custody and keeping by virtue of a warrant of the Governor of Massachusetts as a fugitive from justice of the state of Minnesota, making a copy of the warrant a part of his answer; that the warrant had been served upon the relator who had been arrested thereon; that the relator is lawfully held and detained in his custody to await full execution of the warrant; and that the relator so held under said warrant is the identical person named therein as the alleged fugitive—meaning Huie Fung.

The relator filed a reply traversing the return of the respondent Ferrari, denied each and every allegation of the return, save and except that the relator admitted that the respondent was a state police officer of Massachusetts, and that the only alleged or pretended justification of the respondent for his detention of the relator was by virtue of the alleged executive warrant of the Governor of Massachusetts. It was further averred in the traverse or reply that the warrant was issued without due authority of law and afforded no justification to the respondent for the detention of the relator.

A hearing was had in the District Court on April 10, 1931, after which, on that day, the petition was ordered dismissed, the writ discharged, and the relator remanded to the custody of Ferrari. This is the decree appealed from.

In entering this decree, the District Court in substance and effect ruled that the demand of the Governor of Minnesota and the accompanying papers furnished sufficient and adequate grounds for, and justified the Governor of Massachusetts in, the issuance of his warrant for the arrest and return of the person demanded; and found that the presumption arising from the issuance of the warrant —that Huie Fong was a fugitive from the justice of the state of Minnesota—was not overcome; and that the relator was the identical person demanded.

The proceedings before the Governor of the state of refuge in matters of this kind are summary in their nature, and he may or may not grant a hearing before him. In this case, as authorized by the statutes of Massachusetts (G. L. Mass. c. 276, § 12), the Governor of Massachusetts directed a hearing before the Attorney General of that state, which was had, and, the Attorney General having made his report, the Governor took the matter under consideration, and issued his warrant, in which he recited his findings to the effect that the demand was accompanied "by certain documents whereby said Huie Fung is shown to have been duly charged with the said crime and to be a fugitive from the justice of the state of Minnesota; and to have taken refuge in this commonwealth, which documents are duly certified," etc. The issuance of the warrant, with or without a recital therein that the person demanded is a fugitive from justice, must be regarded as presumptively right until the legality of the warrant is overthrown by contrary proof. Munsey v. Clough, 196 U. S. 364, 372, 25 S. Ct. 282, 49 L. Ed. 515; Hogan v. O'Neill, 255 U. S. 52, 41 S. Ct. 222, 65 L. Ed. 497. And the burden of overcoming this presumption is cast upon the relator in this habeas corpus proceeding to review the action of the governor. Munsey v. Clough, supra, 196 U. S. at page 372, 25 S. Ct. 282, 49 L. Ed. 515; Hogan v. O'Neill, supra; State v. Clough, 71 N. H. 594, 600, 33 A. 1086, 67 L. R. A. 946; State v. Clough, 72 N. H. 178, 55 A. 554, 67 L. R. A. 946.

Whether the person arrested is the identical person demanded is not a question presented for the consideration of the Governor of the state of refuge; for, at the time the demand is made, no such question has arisen, as no warrant has issued and no arrest has been made thereon. But, after an arrest on the warrant, this question may be raised in a habeas corpus proceeding; and, as to this matter, there being no presumption that the person arrested is the person demanded, the burden of the issue is upon the respondent.

In this case there can be no question but that the papers accompanying the demand were certified by the Governor of Minnesota to be authentic and to be duly authenticated.

The main question raised by the assignments of error is whether the complaint and accompanying affidavit of Officer Mullen, charging the person demanded with the crime

194

of murder in the state of Minnesota, are such a compliance with section 5278 of the Revised Statutes of the United States (18 US CA § 662) as would authorize the Governor of Massachusetts in issuing his warrant for the arrest of the person demanded.

The solution of this question depends upon the meaning of the word "affidavit" as used in section 5278, construed in the light of the Fourth Amendment of the Constitution.

■ It is well settled that the "affidavit" called for by section 5278, when so construed, is an affidavit stating facts of the affiant's own knowledge, which would be admissible as evidence and sufficient to warrant a finding of probable cause of the commission of the offense by the person charged therewith. Ex parte Hart (C. C. A.) 63 F. 249, 28 L. R. A. 801. See, also, the following cases with reference to section 3462 of the Revised Statutes (26 USCA § 1195) and the Fourth Amendment of the Constitution: Wagner v. United States (C. C. A.) 8 F.(2d) 581, 584, 585; Schencks v. United States, 55 App. D. C. 84, 2 F.(2d) 185; Rice v. United States (C. C. A.) 24 F.(2d) 479, 480; Ripper v. United States (C. C. A.) 178 F. 24, 26; 24 Op. Attys. Gen. 685.

And by a statute of Massachusetts (G. L. Mass. c. 276, § 11), apparently enacted in aid of and in conformity with section 5278 (18 USCA § 662) and the Fourth Amendment, it is expressly provided:

"Such demand * * * shall be accompanied by * * * a duly attested copy of an indictment or complaint made before a court or magistrate authorized to receive it. Such complaint shall be accompanied by affidavits to the facts constituting the crime charged by persons who have actual knowledge thereof. * * *"

■ It may be suggested that the question is of a more narrow scope; that the demand of the Governor of Minnesota and the warrant of the Governor of Massachusetts were based on the sworn complaint of Officer Mullen alone; that the complaint does not disclose on its face that complainant Mullen did not have personal knowledge of the matters therein stated, and therefore it is to be assumed that he had such knowledge. But the question cannot be so restricted. The demand of the Governor of Minnesota and the warrant of the Governor of Massachusetts, as the record shows, were both based upon the complaint and the accompanying affidavits, of which the affidavit of Officer Mullen was one.

The complaint and supporting affidavit of Officer Mullen, being the basis of the demand and of the warrant respectively, must be read together, as they undoubtedly were by the Governor of Minnesota in making the demand and by the Governor of Massachusetts in issuing his warrant.

As the demand and warrant were based on the complaint and the accompanying affidavit of Officer Mullen, of which the dying declaration of Woo Sam was a part, the question arises whether they state facts competent as evidence and of the affiant's knowledge from which the Governor of Massachusetts could find probable cause for issuing his warrant.

The relator's contention is that the facts stated in Mullen's affidavit and complaint are not of his own knowledge; that it appears from the affidavit that the facts stated in it and in the complaint are facts most of which are contained in the alleged dying declaration of Woo Sam, a part of the Mullen affidavit. It is also contended that the alleged dying declaration of Woo Sam is not one that would be admissible as evidence at a trial for his homicide, and consequently would not be admissible as a fact stated in the Mullen affidavit, on the ground that it was not voluntarily made when conscious of impending death and when the declarant had abandoned all hope of living. 30 C. J. §§ 493, 497, 498.

■ The question whether the dying declaration was voluntarily made by Woo Sam, when conscious of impending death and with no hope of recovery, involves a preliminary question of fact, which, in the first instance, the Governor of Massachusetts had to determine. And whether the warrant of the Governor contained or did not contain a recital that he found the requisite facts to exist, it is, nevertheless, to be presumed that he did; and the burden of showing the contrary was on the relator. Munsey v. Clough, 196 U. S. 364, 372, 25 S. Ct. 282, 49 L. Ed. 515. It is apparent that the facts stated in the affidavit of Mullen constituted evidence from which the Governor of Massachusetts could find that the declaration of Woo Sam was voluntarily made while conscious of impending death and with no hope of recovery. It appears therefrom that on June 8, 1930, about 11.30 p. m., Woo Sam was shot; that he died the next day, June 9, 1930, from the bullet wounds; that he was shot at five times and five bullets lodged in his body; that at 12.30 a. m. June 9, about an hour after he was shot, and while at the General Hospital

where he had been taken, he made the alleged dying declaration, and then stated that he knew he was going to die; that he died thereafter on that day; and that he signed the written declaration which he there made.

If the presumptive findings as to the validity of the dying declaration might have been overcome by evidence before the District Court, the relator offered no such evidence, and, such being the case, it is to be regarded as voluntarily made when the declarant was conscious of impending death and when he had abandoned all hope of recovery; and we so regard it.

The question, however, remains whether a valid dying declaration, stating facts competent as evidence at a trial for the homicide of the declarant, if made in the presence of an affiant, may be stated in his affidavit as of his own knowledge, and the complaint, supported by such an affidavit, be regarded as complying with section 5278 and the Fourth Amendment. While the question is a novel one, it seems to us that the dying declaration of the victim is an evidentiary fact which an affiant before whom it was made may set out in his affidavit and have treated as a fact within his own knowledge and as competent evidence of the crime charged. And, while a dying declaration, testified to by a witness with knowledge of its making, is in a sense, hearsay, yet in the law of evidence it is not so regarded, but is competent proof of the facts therein declared. We are therefore of the opinion that the supporting affidavit of Mullen, in connection with the sworn complaint, met the requirements of the provisions of the Constitution and of the Revised Statutes above referred to, and were, as a matter of law, sufficient to justify the Governor of Massachusetts in the issuance of his warrant.

It is objected that, in the dying declaration, the name "Huie Fung" appears in some instances as "Huie Fon" and "Huie Fun." But we regard these as typographical errors of the transcriber which apparently did not confuse or mislead the Governor of Massachusetts in determining who the person charged with crime in the dying declaration was, and, at the most, only affected its weight, not the competency of the declaration.

The Governor of Massachusetts had before him abundant proof that Huie Fung, the person demanded, was a fugitive from justice. It appeared that he was in Minneapolis late in the afternoon of June 8, 1930, on which day the mortal wounds were inflicted of which Woo Sam died, and that later he was found in Massachusetts. At the trial in the District Court, the relator failed to overcome this presumption or finding, and the court so found.

On the question whether the relator was Huie Fung, the person demanded, the District Court ruled that the burden was on the respondents, and, proof being offered, found that the relator was the person demanded.

The affidavits of Ark Sing and Dong Toy, with the attached photographs, were received in evidence and considered by the court, upon the question of the identity of the relator and the person demanded, subject to the exception of the relator. They were undoubtedly competent evidence before the Governor on the question whether the person demanded was a fugitive from justice, for the Governor was entitled to receive such evidence as to him seemed worthy of credit. Munsey v. Clough, 196 U. S. 364, 25 S. Ct. 282, 49 L. Ed. 515; State v. Clough, 72 N. H. 178, 55 A. 554, 67 L. R. A. 946. But the relator in none of his assignments of error complains that the court erred in receiving these affidavits. The only assignment complaining of the reception of evidence at the trial is No. 19, which was filed in the District Court May 16, 1931, about a month after the appeal had been taken to this court. The appeal had been allowed on the 18th of April, 1931, on which day the appeal bond and some eighteen assignments of error were filed. The alleged nineteenth assignment of error, not having been filed in the District Court until after the case had been removed to this court, is not a part of the appeal record. But this supposed assignment does not complain of the admission in evidence of the two affidavits of Ark Sing and Dong Toy. The matter there attempted to be assigned as error was that the court erred in admitting "the testimony of one James L. Mullen relative to the alleged dying declarations or statements of Woo Sam." The testimony of Mullen relative to the alleged dying declaration of Woo Sam had nothing to do with the admission of the affidavits of Ark Sing and Dong Toy, and no exception was taken to this testimony of Mullen. There was an exception taken to the introduction in evidence of the original written declaration signed by Woo Sam, but the supposed assignment of error, filed May 16, 1931, is not based on this exception, and, if it were, the question raised would be without merit.

The decree of the District Court is affirmed.

WILSON, Circuit Judge (concurring in the result).

I am unable to concur except in the result of the opinion of the majority, as it seems to me to misinterpret section 5278 of the Revised Statutes (18 USCA § 662) governing extradition, which the opinion construes in the light of the Fourth Amendment of the Federal Constitution. The Fourth Amendment has nothing to do with the forms of complaints, or the grounds on which a warrant for arrest may be issued in the several states.

The opinion states that "it is well settled that the affidavit called for by section 5278 when so construed, is an affidavit stating facts of the affiant's own knowledge, which would be admissible in evidence and sufficient to warrant a finding of probable cause of the commission of the offense by the person charged therewith;" but the cases, with the exception of Ex parte Hart (C. C. A.) 63 F. 249, 28 L. R. A. 801, cited in support of the statement, viz. Wagner v. United States (C. C. A.) 8 F.(2d) 581; Schencks v. United States, 55 App. D. C. 84, 2 F.(2d) 185; Rice v. United States (C. C. A.) 24 F. (2d) 479; Ripper v. United States (C. C. A.) 178 F. 24, 26, are all cases involving federal offenses and the issuing of search warrants under the Fourth Amendment of the Federal Constitution, and sections 613, 614, and 615 of title 18, USCA, and, of course, must conform thereto; but they do not control the issuing of warrants on complaints or affidavits in the several states. In the Matter of Strauss, 197 U. S. 324, 331, 25 S. Ct. 535, 536, 49 L. Ed. 774; Pierce v. Creecy, 210 U. S. 387, 404, 28 S. Ct. 714, 719, 52 L. Ed. 1113; Webb et al. v. York (C. C. A.) 79 F. 616.

It is perfectly clear that what is meant by the affidavit referred to in section 5278 is an affidavit made for the purpose of instituting proceedings in a state court for the arrest of the accused and the eventual determination of his guilt or innocence of the crime charged in the affidavit, which is complied with by what is commonly termed a complaint under oath.

The people in adopting the first ten amendments not only reserved the determination of the form in which charges should be made against persons accused of offenses against a state and on what evidence warrants of arrest may be issued, but by the Fourth and Fifth Amendments they placed certain inhibitions on the federal authorities in criminal proceedings against a citizen. To hold that Congress has imposed any restrictions upon the powers reserved to the states in such matters is contrary to the spirit in which these amendments were added to the original Constitution, and is in violation of the prerogatives expressly reserved to the states.

The case of Ex parte Hart relates to an information, unverified on oath, and has not been followed nor cited in any later extradition case in support of the rule stated in the opinion, nor does the case itself go that far. On the contrary, it has been expressly held, as stated above, in the cases of In the Matter of Strauss and in Pierce v. Creecy, that the Federal Constitution does not control the manner in which the "charge" shall be made in the demanding state, nor does section 5278, except that it shall be by indictment, or an affidavit before a magistrate.

In the matter of Strauss, supra, in construing section 5278, Rev. St., the court said: "Under the Constitution each state was left with full control over its criminal procedure. No one could have anticipated what changes any state might make therein, and doubtless the word 'charged' was used in its broad signification, to cover any proceeding which a state might see fit to adopt by which a formal accusation was made against an alleged criminal. In the strictest sense of the term a party is charged with crime when an affidavit is filed, alleging the commission of the offense, and a warrant is issued for his arrest; and this is true whether a final trial may or may not be had upon such charge."

And in Pierce v. Creecy, supra, the court said: "But the Constitution does not require, as an indispensable prerequisite to interstate extradition, that there should be a good indictment, or even an indictment of any kind. It requires nothing more than a charge of crime. Congress, in aid of the execution of the constitutional provision, has enacted a law—§ 5278, Rev. Stat. [18 USCA § 662]—directing that the charge shall be made either by 'an indictment found' or 'an affidavit made before a magistrate;' and, as we have seen, this court has held that such an affidavit is sufficient, saying ([In re Strauss] 197 U. S. 331, 25 S. Ct. 537, 49 L. Ed. 778): 'Doubtless the word "charged" was used in its broad signification to cover any proceeding which a state might see fit to adopt, by which a * * * formal accusation was made against an alleged criminal.'"

The federal question, therefore, involved in section 5278 is whether a charge has been made against the alleged fugitive from justice by indictment, or affidavit before a mag-

istrate, in accordance with the Constitution and laws of the demanding state, and not whether it has been made in accordance with the Fourth or Fifth Amendment to the Federal Constitution, or any federal statute, though the requirements may, in terms, be substantially the same.

The county attorney of Hennepin county, Minn., properly based his petition to the Governor of that state for the extradition of Huie Fong on the complaint and warrant alone. The complaint was positively sworn to as true; a warrant was issued thereon with a return by an officer nine months thereafter of non est inventus. No more was required under section 5278 to warrant extradition, unless evidence in the form of affidavits or otherwise, satisfactory to the Governor of Massachusetts, and sufficient to satify him that the person so charged was a fugitive from justice in his state. In the Matter of Strauss, supra; Compton v. Alabama, 214 U. S. 1, 29 S. Ct. 605, 53 L. Ed. 885, 16 Ann. Cas. 1098, affirming 152 Ala. 68, 44 So. 685; Chandler v. Sipes, 103 Neb. 111, 170 N. W. 604; Morrison v. Dwyer, 143 Iowa, 502, 121 N. W. 1064; Ex parte Flournoy, 310 Mo. 355, 275 S. W. 923; People v. Chief of Police, 97 Misc. Rep. 254, 162 N. Y. S. 845; State ex rel. v. Goss, 66 Minn. 291, 68 N. W. 1089; State ex rel. v. Curtis, 111 Minn. 240, 242, 126 N. W. 719. That this petitioner was a fugitive from justice might even have been inferred from the return of the warrant issued on the complaint before the magistrate in Minnesota.

While the demand of the Governor of Minnesota on the Governor of Massachusetts states that "it appears by the complaint and accompanying affidavits" that Huie Fong stands charged with the crime of murder and is now a fugitive from justice, and may have taken refuge in the state of Massachusetts, it surely does not follow, in view of the authorities above cited, that the accompanying affidavits were necessary to comply with section 5278, Rev. St. (18 USCA § 662), or that they must be read together with the complaint for that purpose. No doubt they were intended for the consideration of the Governor of Massachusetts. That they were necessary under section 5278 to warrant compliance with the demand of the Governor of Minnesota I do not agree, unless the Governor of Massachusetts required additional evidence to that contained in the complaint and warrant that the accused was a fugitive from justice and had taken refuge in Massachusetts.

It is also quite obvious that the affidavit of the officer Mullen, to which the dying declaration was attached, was not made in connection with the complaint, but was made nine months later, either to comply with some rule adopted by the executive department in Minnesota in relation to extradition proceedings or to comply with section 11 of chapter 276, G. L. Mass.

Such a rule or statute in a demanding state might be construed as in aid of section 2 of article 4 of the Federal Constitution, and not contrary to the provisions of section 5278, but, if a statute in a state of refuge, similar to that of Massachusetts above referred to, is construed to require anything more from a demanding state than the federal statute requires, it is inconsistent with and not in aid thereof, and cannot stand. If the Massachusetts statute is to be literally construed and applied, it would defeat the very purpose of the Federal Constitution and the federal statute, which were enacted to promote good will and comity between the states, Kentucky v. Dennison, 24 How. 66, 16 L. Ed. 717; since there are few cases where one could make an affidavit of the facts constituting the crime charged as of their actual knowledge, and as a result many a criminal would go "unwhipped of justice."

States undoubtedly may legislate in aid of the provisions of article 4, § 2, of the Federal Constitution, where Congress has not fully covered the subject, but where Congress has specifically covered the conditions under which the obligation to surrender up a fugitive from justice arises, a state of refuge cannot impose additional conditions to those imposed by Congress; otherwise confusion would result, to avoid which section 2 of article 4 was inserted in the federal Constitution, and section 5278 was enacted. Innes v. Tobin, 240 U. S. 127, 131, 36 S. Ct. 290, 60 L. Ed. 562.

In other words, if a complaint positively sworn to, charging a crime under the laws of the demanding state, in a manner sufficient to warrant an arrest in that state, is sufficient to comply with section 5278, as it clearly appears to be, a state of refuge cannot insist upon additional affidavits setting forth in detail the facts constituting the crime charged as of the actual knowledge of the affiants as a sine qua non of surrendering up a fugitive from justice.

The opinion states that the complaint and accompanying affidavit of Officer Mullen were the basis of the demand by the Governor of Minnesota. His requisition does

not so state, but that "it appears by the complaint that the accompanying affidavits," which included those of Ark Sing and Dong Toy, as well as that of Mullen.

The affidavit made by Mullen is therefore of little consequence in this case, except as bearing on the identity of the accused with the alleged fugitive from justice, on which issue the Governor of Massachusetts is not bound by the ordinary rules of evidence. It is therefore immaterial in these proceedings whether the dying declaration is admissible as evidence in the courts of Minnesota or not.

The essential point in this case is that the requisition discloses that three days after the crime was committed the officer had gathered sufficient knowledge of the facts on which to base a charge against the fugitive of the crime of murder, to which he made positive oath before a magistrate, and upon which complaint a magistrate issued his warrant for the arrest of the accused. No further affidavits were necessary to satisfy the requirements of section 5278.

In Collins v. Traeger (C. C. A.) 27 F.(2d) 842, 845, the court used this language: "It is next objected that the complaint or affidavit is insufficient, for the reason that the Illinois statute requires that a complaint for preliminary examination shall contain, in addition to a concise statement of the offense and the name of the accused, an averment that the complainant has just and reasonable grounds to believe that such person committed the offense. Such language is not found in the complaint, but it goes further than is necessary, and charges directly and positively that appellant committed the offense—language manifestly stronger than that required by the statute."

The Governor of Massachusetts had before him a duly authenticated copy of a complaint under positive oath that the alleged fugitive, Huie Fung, had committed the crime of murder in the state of Minnesota. Notwithstanding the complaint was positively sworn to by the complainant Mullen, the opinion states that it is not to be assumed that he had personal knowledge of the facts therein stated, but the complaint must be construed in the light of the accompanying affidavit of Mullen, made nine months later.

But, at least, there is no presumption that the dying declaration was the only source of the officer's information as to the facts on which the complaint was based, which is in the usual form charging murder; on the contrary, there is the presumption that the magistrate before whom the complaint was verified on oath acted in accordance with the Constitution (article 1, § 10) and laws of Minnesota (section 10577, Gen. Statutes), and that the complainant presented to him sufficient evidence on which he found that the crime of murder had been committed, and also facts, either of his own knowledge or obtained from sources believed to be reliable, on which the magistrate found that there was probable cause to believe that Huie Fung was guilty of the offense charged. No evidence was presented to the Governor of Massachusetts or the District Court to overcome this presumption, if, indeed, it is rebuttable in extradition proceedings. Ex parte Swearingen, 13 S. C. 74, 77, 78. Probable cause does not require actual knowledge of facts sufficient to convict, nor that all the information the complainant had on which probable cause was found be obtained under circumstances to make it admissible in a court of law. It is only required that he has legal evidence to show that a crime has been committed and facts of his own knowledge, or obtained from reliable sources, to warrant a reasonable man to believe that the accused is the guilty party. Husty v. United States, 282 U. S. 694, 700, 701, 51 S. Ct. 240, 75 L. Ed. 629, 74 A. L. R. 1407.

A complaint positively sworn to, and the issuance of a warrant of arrest by a magistrate, are evidence that the requirements of article 1, § 10, of the Constitution, and section 10577 of the General Statutes of Minnesota have been complied with and probable cause shown. State v. Nerbovig, 33 Minn. 480, 24 N. W. 321.

Neither the Governor of Massachusetts nor this court, therefore, is concerned with the question of whether the accused can be convicted in Minnesota, or whether the dying declaration of the deceased is admissible in evidence in that state. That is for the courts of Minnesota to determine.